R. A. CHILDS, L. D. CHILDS, JANIE C. PHIFER AND MARGARET CHILDS v. WARNER BROTHERS SOUTHERN THEATRES, INC.

(Filed 18 February, 1931.)

**Landlord and Tenant D b—Lessee assigning lease held liable to lessor for rent under terms of lease contract in this case.**

Where a lease of real property expressly provides that the lessee, his heirs and assigns might not transfer the leased premises to another without the consent of the lessor, the restrictions do not solely apply to the original lessee, and where there are several and successive assignments of the lease, the consent of the lessor to one of these does not waive his right to withhold his consent to subsequent assignments, the respective lessees taking with notice of the express terms of the lease, and where after a series of such transfers the lessor notifies a lessee that the latter could not transfer the lease to another but upon condition that he remain liable for the rent according to the terms of the original lease, the condition under which the lessee may lease the premises is enforceable by the lessor.

CIVIL ACTION, before *Oglesby, J.,* at Spring Term, 1930, of MECKLENBURG.

The agreed facts are substantially as follows: Prior to 1 February, 1923, the Berkley Company, a corporation, owned certain property in the city of Columbia, known as No. 1426 Main Street, fronting on said street approximately 26 feet, and having a depth of approximately 125 feet. The property was used for the purpose of conducting a moving

picture theatre. On 1 February, 1923, the Berkley Company leased said property to R. D. Craver for a period of five years, commencing 1 February, 1923, and ending 31 January, 1928. Thereafter the Berkley Company conveyed the property to the plaintiffs in this action. Subsequently, on or about 10 June, 1925, Craver, the lessee, "transferred and assigned said lease to Warner Bros. Southern Theatres, Inc." The transfer or assignment by Craver purported to convey "all right, title and interest of the undersigned" in and to said lease. The plaintiffs assented to said assignment. Thereafter Warner Bros. Southern Theatres, Inc., took charge of the property and occupied it until about 28 January, 1926, when they reassigned said lease to Carolina Theatres, Inc. The Carolina Theatres, Inc., took possession of the property and occupied the same until said corporation was placed in the hands of a receiver. Warner Bros. Southern Theatres, Inc., paid all rent that accrued up to the time they reassigned said lease to Carolina Theatres. When Warner Bros. Southern Theatres, Inc., assigned the lease to Carolina Theatres they notified the plaintiff of such assignment. Whereupon, the plaintiff notified said Warner Bros. Southern Theatres, Inc., as follows: "If it is your desire to have the Carolina Theatres, Inc., remit the rent direct to me, that will be satisfactory, but I shall continue to recognize you as the lessee of the property now occupied by the Broadway Theatres and expect you to see that the payments are made promptly in accordance with the lease." The amount of rent accrued and unpaid is $450.

The original lease between the Berkley Company and Craver specified: (a) "that said Berkley Company, Inc., has granted and leased, and by these presents does grant and lease unto the said R. D. Craver, lessee, the two-story building situate, lying and being on the eastern side of Main Street," etc.; (b) "to have and to hold the said premises unto the said R. D. Craver, his executors, administrators and assigns for the full term of five years," etc.; (c) "said R. D. Craver, his executors, administrators and assigns for and in consideration of the above letten premises hereby covenant and agree to pay to the said Berkley Company, Inc., its successors and assigns the above-stipulated rent in the manner herein required"; (d) "if the said lessee shall at any time fail or neglect to perform any of the covenants hereunto contained and on his part to be performed, or shall be adjudged a bankrupt, or insolvent, then and in that event the lessor shall have the right to reënter into and upon the demised premises," etc.; (d) "lastly, it is agreed that the said R. D. Craver shall not convey this lease or underlet the premises without the written consent of the lessors," etc.

Upon the foregoing facts the trial judge was of the opinion that the defendant assignee was liable for the rent and so adjudged, from which judgment the defendant appealed.

*J. L. Delaney for plaintiff.*
*A. B. Justice for defendant.*

BROGDEN, J.　If a lessor executes a lease to a given lessee, and the lease provides that the lessee shall not convey the lease nor underlet the premises without the written consent of the lessor, and thereafter the lessor consents to an assignment of the lease, can such assignee subsequently make a valid reassignment of the lease without the consent of the lessor?

In 1603 the English courts decided *Dumpor's case,* which is reported in 4 Coke, 119, Smith Leading Cases (8th ed.), 95.　In that case a lease was made to a lessee and the lease provided that the lessee or his assigns should not alienate the premises to any one without special license of the lessors.　Subsequently the lessors consented that the lessee might assign the lease, and in consequence thereof the lessee assigned to one Tubbe.　It was held that the assignee Tubbe had a right to assign the remainder of the term to any person whomsoever, irrespective of the consent of the lessors upon the ground that the condition in the lease prohibiting assignment without the consent of the lessor was entire, consequently the assent to assignment having once been given, the whole condition was wiped out, and the assignee was at liberty to assign the lease to whomsoever he pleased.　In other words, if a lessor once gives his assent to an assignment, such assent is deemed to be a waiver of the provision prohibiting assignment and the control of the lessor over his property is forever gone.　The *Dumpor case* was followed in England and perhaps crossed the Atlantic in the Mayflower and took root in America because many of the earlier cases in the American courts followed the reasoning and applied the doctrine announced by the English courts.　However, some of the courts, in order to avoid the application of the principles in the *Dumpor case,* began to draw a distinction between covenants in a lease which were single and covenants which were multiple.　That is to say, if the covenant against assignment operated only upon the lessee and did not extend to his heirs and assigns, the covenant or condition was said to be single; but if the covenant against assignment without the written assent of the lessor operated not only upon the lessee but upon his heirs and assigns, the covenant is properly deemed to be multiple.　Many courts took the position that if the covenant was single, *Dumpor's case* applied; but if the covenant was not single, *Dumpor's case* did not apply.　The whole question is discussed and the authorities assembled in *Investors' Guaranty Corporation v. Thompson,* 225 Pac., 590, 32 A. L. R., 1071.　See, also, *Spitz v. Nunn,* 171 N. E., 117; *Klein v. Niezer,* 169 N. E., 688; *Gusman v. Mathews,* 163 N. E., 636.　See, also, *Keith v. McGregor,* 259 Southwestern, 725, 36 A. L. R., 311.

In the case at bar the lease in the habendum clause expressly included the lessee and his assigns. Moreover, the lessee and his assigns agreed to pay the rent, and upon failure to pay the rent, the lessor expressly reserved the right of reëntry upon the premises. Without entering into any discussion of the distinctions which may exist between single and multiple covenants and the great learning with which various views are elaborated, it is deemed sufficient to say that a reasonable construction of the lease involved in this case leads to the conclusion that the restriction against assignment and subletting operated upon the heirs and assigns of the lessee as well as upon the lessee himself. The covenant to pay rent is continuous in its nature, and such covenant is binding by express provision upon the assigns of the lessee, and all persons occupying the premises under the assignment from the lessee were charged with notice of the conditions imposed by the writing under which they held title to the premises. Therefore, we hold that by consenting to one assignment the lessor did not waive the conditions of the lease and did not consent that thereafter any subsequent assignee could turn his property over to the use and occupancy of any undesirable or irresponsible person without his approval. Indeed, when the defendant notified the plaintiff of its purpose to reassign the lease, the plaintiff gave express notice that it would still hold the defendant liable for the rent. *Krider v. Ramsay*, 79 N. C., 354; *Alexander v. Harkins*, 120 N. C., 452, 27 S. E., 120; *Garbutt & Donovan v. Barksdale-Pruitt Junk Co.*, 139 S. E., 357; *Millinery Co. v. Little-Long Co.*, 197 N. C., 168, 148 S. E., 26.

Affirmed.