## HUNT v. SHELL OIL CO. et al.

### No. 2150.

Circuit Court of Appeals, Tenth Circuit.

Jan. 2, 1941.

Shirley P. Jones, of Salt Lake City, Utah (Knox Patterson, of Salt Lake City, Utah, on the brief), for appellant.

Grant H. Bagley, of Salt Lake City, Utah, for appellees.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

On June 1, 1933, Moroni Hunt and Angus E. Johnson leased to the Shell Oil Company by written lease certain described real estate on which there was located a gas and oil service station, for a period of three years commencing June 1, 1933, and ending May 31, 1936. The Shell Oil Company agreed to pay as rental therefor a sum equal to one cent for each gallon of gasoline delivered by the lessee to the demised premises and sold therefrom during the term of the lease. The rental was payable in cash or by credit. On the same day and as a part of the same transaction the parties executed a second agreement, called a Lease and Consignment Contract. The contract made express reference to the lease contract and provided that Shell, as lessee, sublet the station to Hunt and Johnson as agent. It provided further that Hunt and Johnson, as agent, were to operate a service station on the premises and sell only Shell products; that they should not sublet or assign the premises without the written consent of Shell; that Shell should maintain on consignment at the station a quantity of its products sufficient to meet the requirements of the station. The contract contained the usual provisions appropriate to a consignment contract, such as relate to the care of the merchandise, accounting for the sale thereof, the compensation of the agent, and many others.

Prior to the execution of these contracts, Hunt had been operating the station alone for the benefit of himself and Johnson. Johnson had been and was at the time of the execution of these agreements, employed by the Shell Oil Company as a selling and distributing representative of Shell in several adjoining counties. Immediately after the execution of the contracts it was orally agreed between Hunt and Johnson that Hunt should continue to operate the station and use the proceeds accruing to them to pay the balance they owed on the purchase price of the property and thereafter pay Johnson $25 per month as a rental for his one-half interest in the property. Hunt sold 366,671 gallons of gasoline through this station. Some time in the latter part of 1936 or the first part of 1937, he ascertained that he was not receiving credit from the company for the one cent a gallon rent and brought an action to recover the amount of rent he claimed to be due. Hunt will be referred to as plaintiff and the Shell Oil Company as defendant.

Defendant in its answer denied that it was indebted to plaintiff in any sum. The defense was that the two contracts constituted a single transaction; that the assignment by Johnson to plaintiff of his interest in the consignment contract breached the covenant against assignment of the lease without the consent of the defendant; that the agency created by the consignment contract was thereby terminated; that by the oral contract with Johnson plaintiff had rendered himself incapable of performing the consignment contract and the lease contract and had thereby abandoned such contracts and that the agreements were therefore at an end. Plaintiff filed a reply in which he asserted that he and defendant had not operated under the terms of the consignment contract insofar as it related to the consignment of gasoline, because defendant had refused to consign gasoline but on the contrary required plaintiff to pay the cash market price therefor. Otherwise the reply controverted the allegations of the answer.

The cause was tried to the court. The court found that the oral agreement between Johnson and plaintiff was tantamount to an abandonment of the contract; that neither plaintiff nor Johnson had performed the terms and provisions of the consignment contract; that as a result thereof no gasoline was consigned and that defendant was not indebted to them or either of them on account of the rentals provided for in the lease contract. Plaintiff's cause of action was dismissed and judgment was entered for defendant for costs, from which this appeal has been taken.

The oral transaction between plaintiff and Johnson does not violate the covenant against assignment of the contract. A covenant against assignment is not broken

by the dissolution of a firm or the transfer of possession to one of the partners by the other, nor yet by a change in the firm by the admission or withdrawal of partners. Miller v. Pond, 214 Mich. 186, 183 N.W. 24, 17 A.L.R. 179; Tierney v. McKay, 232 Mich. 609, 206 N.W. 325; Roosevelt v. Hopkins, 33 N.Y. 81; Burleson v. Blankenship, 193 Wash. 547, 76 P.2d 614; also Lewis, Law of Leases, 438; Taylor on Landlord and Tenant, 8th Ed., § 489.

But even if the oral contract between Johnson and plaintiff be treated as an assignment and therefore a violation of the provision prohibiting assignment, it does not follow that the contract is terminated thereby. Neither the rental contract nor the consignment contract provides that in the event of a breach of any of the terms thereof by either party the contract shall terminate and be at an end. In the absence of such a provision, the breach by one of the parties does not ipso facto terminate the agreement. The aggrieved party may terminate the contract or waive the breach and treat the contract as in full force. M. Karam & Sons Merc. Co. v. Serrano, 51 Ariz. 397, 77 P.2d 447; Rutledge v. Barger, 82 Cal.App. 356, 255 P. 537; Robeson v. Bennett, 98 Colo. 272, 56 P.2d 34; Kewanee Boiler Corp. v. American Laundry Mach. Co., 289 Ill.App. 482, 7 N.E.2d 461; Cities Service Oil Co. v. Taylor, 242 Ky. 157, 45 S.W.2d 1039, 79 A.L.R. 1374; Cohen v. Todd, 130 Minn. 227, 153 N.W. 531, L.R.A.1915E, 846; Adams v. Graham Stave & Heading Co., 160 Miss. 266, 135 So. 198. The breach may be waived expressly or by implication flowing from the conduct of the aggrieved party.

Defendant must have contemplated from the outset that Johnson would not be active in the operation and conduct of the business. He was its agent, devoting practically all his time to the sale and distribution of its products, and there is no intimation that defendant understood or expected that he would discontinue such services and devote himself to the conduct of the business at this station. The lease does not provide that plaintiff and Johnson shall both give their personal attention and devote all their time to the station. Furthermore, the district agent and supervisor of defendant testified that early in 1934 he learned of the agreement between plaintiff and Johnson. No objection was made by defendant and as late as April 24, 1935,

it billed Johnson and plaintiff for gasoline, setting out in the statement the retail price, the net price, and giving a credit of one cent for lease rental. These billings were entered on the books of defendant, and plaintiff and Johnson were there credited with the rental. The only explanation given of these entries was that they were erroneously made and without the knowledge of the proper authorities and were later expunged.

Defendant attempted to procure a new gasoline contract with plaintiff and Johnson for the sale of gasoline on the premises, and for that purpose prepared a contract dated August 6, 1936, designated "DO-613." The seventh paragraph of this contract provided that: "This contract shall, as of the commencement date hereof, cancel and supersede all prior agreements (written or oral, express or implied) between seller and Buyer for the purpose and sale of the products named herein, and *shall cancel and supersede any and all leases or other agreements between the parties hereto relative to the property from which the products hereunder are to be resold* and any and all other arrangements or understandings with regard to prices, discounts or differentials or relating to credits, bonuses or concessions to be paid by Seller in connection with the purchase or sale of said products." (Italics supplied.)

Defendant signed this contract, and it was signed "Johnson & Hunt, Buyer. By Angus E. Johnson." Plaintiff had not signed the contract, so on April 21, 1937, defendant wrote Johnson pointing out the necessity of procuring his signature on the contract. This letter contained the following: "Paragraph No. 7 of the DO-613, provides that upon proper execution, same shall constitute the entire agreement between Seller and Buyer and that same cancels and supersedes all prior agreements. Inasmuch as the DO-613 in question is not signed by both Messrs. Johnson and Hunt, it can not be considered as fully effecting cancellation of *our lease dated 6/1/33.*" (Italics supplied.) The letter proceeded by stating that if Johnson was unable to procure the signature of plaintiff to the contract, it was important that the three copies of a termination agreement enclosed in the letter be signed by both plaintiff and Johnson. Among other provisions, the termination agreement provided: "That certain Service Station Lease bearing date;

the First day of June, 1933, made and entered into by and between the party of the first part herein as Lessor, and the party of the second part herein as Lessee, is hereby fully cancelled and annulled and made of no further force or effect whatsoever from and after the date hereof, and each of the parties hereto fully releases and relieves the other of and from all obligations thereunder hereafter accruing."

From all this, it clearly appears that defendant did not consider the lease contract or the consignment contract annulled and for that reason was anxious to obtain the execution of the new lease or the termination agreement terminating the prior contracts.

██ The lease contract and the consignment contract were executed on the same day by the same parties and as a part of the same transaction. The contracts must be considered together to evidence the purpose in the minds of the parties to the agreements and they are to be considered as a single transaction. The consideration flowing to the respective parties can be determined only by considering the contracts as one instrument. Shell Oil Co. v. Stiffler, 87 Utah 176, 48 P.2d 503, 506. Viewed in this light the purpose of defendant in the execution of these contracts was to procure an additional outlet for the sale of its products, free from competition by others engaged in a like business. The lease contract specifically states that the consideration prompting defendant in the execution of the agreement was to secure the representation and sale of its products upon and from the demised premises. In the lease contract plaintiff bound himself not to permit the use of any adjoining premises in which he had an interest for the sale of competing products other than those of defendant. The contract prohibited him from leasing to others any adjoining premises to be used as a service station or storing or selling from any adjoining premises any oil or gasoline products, save that he could sell therefrom or permit the sale therefrom of products of defendant. Plaintiff bound himself to handle on the premises only products of the defendant and to sell them at such prices as were fixed by the defendant. He bound himself not to offer premiums or discounts or resort to any other device whereby the net selling price of gasoline consigned by defendant to the agent should be lower than that authorized by defendant. He agreed

to maintain on the premises a sign conspicuously displaying the name of the agent or of the service station, together with the words, "Authorized Filling Station for Shell Products." In return, the defendant bound itself to pay to plaintiff a compensation as fixed in the consignment contract, and in addition thereto, what was designated as a rental of one cent per gallon for each and every gallon of gasoline delivered to and sold through the station. Defendant got all it bargained for. There is no evidence in the record that plaintiff sold any gasoline through this station in violation of any of the terms of the contract. Defendant received all the benefits which it sought through the execution of these contracts, and the only basis for its refusal to pay what it agreed to pay was that the oral agreement between Johnson and plaintiff violated the prohibition of the consignment contract against assignment. We have held that such was not the effect of the oral contract, but if it be conceded, for the sake of argument, that it did violate the provision against assignment, the violation was waived by defendant's conduct in recognizing the continued existence of the contract, by continuing operations thereunder and taking all the benefits contemplated by the agreement.

Reversed and remanded.