QUEEN CITY COACH COMPANY, A CORPORATION, v. CAROLINA·COACH COMPANY, A CORPORATION; VIRGINIA SURETY COMPANY, A CORPORATION; LIBERTY MUTUAL INSURANCE COMPANY, A CORPORATION; AND LLOYDS OF LONDON, AN UNINCORPORATED ASSOCIATION.

(Filed 20 May, 1953.)

**1. Judgments § 17b—**

A judgment must be interpreted in the light of the pleadings, the issues, findings of fact, and conclusions of law.

**2. Appeal and Error § 3—**

The party who, under the terms of the judgment construed in the light of the record, is required to suffer the loss in suit, is the party aggrieved, and has the right to appeal. G.S. 1-271.

**3. Appeal and Error § 40d—**

The findings of fact of the trial court are conclusive on appeal when supported by competent evidence.

**4. Insurance § 43b—Under terms of contracts in suit, lessor's liability insurance covered lessor's buses while being operated on lessee's route, and not any vehicle of lessee.**

Two common carriers by bus executed an agreement under which each would operate three buses daily over their combined franchise routes, with provision that while operating over the franchise route of the one, the buses of the other were to be under lease and under the direction and control of the lessee, and that while lessee should be solely responsible to third persons for all liabilities "growing out" of operations of lessor's buses over lessee's franchise route, lessor would furnish liability insurance covering its buses while so operated, with lessee named therein as an additional insured. The respective insurers executed endorsements to their contracts in accordance with this agreement. The bus of one carrier became disabled while being operated on the franchise route of the other, and lessee sent

its bus to take over the passengers from the disabled bus. While lessee's bus was en route to the disabled bus it was involved in a collision for which lessee was forced to respond in damages. *Held:* Neither lessor nor its insurers may be held liable to lessee for the loss, since under the contract between the carriers and the insurance endorsements pursuant thereto, the insurance covered lessor's buses while being operated over lessee's franchise route, and the fact that lessee dispatched its bus as a result of the operation of lessor's bus over lessee's franchise route, cannot enlarge the liability of lessor or its insurers as denominated in the contracts.

APPEAL by defendant, Virginia Surety Company, from *Sharp, Special Judge,* at October Term, 1952, of MECKLENBURG.

Civil action to enforce supposed contract to provide indemnity.

For ease of narration, the Queen City Coach Company is called Queen, the Carolina Coach Company is characterized as Carolina, the Virginia Surety Company is designated as Virginia, the Liberty Mutual Insurance Company is identified as Liberty, and Lloyds of London is referred to as Lloyds.

The salient facts are stated in the numbered paragraphs set forth below.

1. At the times herein mentioned Queen and Carolina were common carriers of passengers by motor vehicle, and as such were engaged in the transportation by motor vehicle in intrastate commerce of passengers for compensation over regular routes and between fixed termini under certificates of public convenience and necessity issued to them by the North Carolina Utilities Commission.

2. The certificates issued to Queen specified that one of its franchise routes as a common carrier of passengers by motor vehicle covered the public highway between Salisbury and Asheville.

3. The certificates issued to Carolina specified that one of its franchise routes as a common carrier of passengers by motor vehicle covered the public highway between Raleigh and Salisbury.

4. Queen maintained a policy of liability and property damage insurance in Virginia as required by G.S. 62-108, "insuring passengers and the public receiving personal injury by reason of an act of negligence arising from the operation of any motor vehicle by . . . (Queen) . . . upon the public highways of the State."

5. Carolina maintained policies of liability and property damage insurance in Liberty and Lloyds as required by G.S. 62-108, "insuring passengers and the public receiving personal injury by reason of an act of negligence arising from the operation of any motor vehicle by . . . (Carolina) . . . upon the public highways of the State."

6. On 29 May, 1947, Queen and Carolina contracted in writing "to cooperate in furnishing . . . to the traveling public a through service between Raleigh . . . and Asheville." The contract stipulated that

Queen and Carolina were "to provide . . . six daily round trips between Raleigh . . . and Asheville"; that three of the round trips were to be made by the buses and drivers of Queen, and that three of the round trips were to be made by the buses and drivers of Carolina; that the buses of Queen were "leased" to Carolina while they were being operated on Carolina's franchise route, and the buses of Carolina were "leased" to Queen while they were being operated on Queen's franchise route; and that the lessee was to have "control and direction" of the buses and drivers of the lessor while such buses and drivers were on the franchise route of the lessee. Certain provisions of paragraphs 11, 12, and 14 of the contract are particularly germane to this litigation. Queen and Carolina expressed these provisions in the following language:

"(11). The lessee shall be solely responsible to third parties for any and all operations and any and all liabilities growing out of such operations as may arise or occur as a result of the operation of lessor's buses over the . . . franchise route . . . of lessee . . ."

"(12). The lessor shall at its own expense carry bodily injury and property damage insurance on buses of lessor operating over the franchise route . . . of lessee under the terms hereof . . . to protect and indemnify the lessor from liability of lessee that may arise under the terms of paragraph 11 hereof, and to that end the lessor shall have its . . . bodily injury and property damage insurance policies endorsed so as to make the lessee an additional insured while the lessor's buses are operated over the franchise route . . . of the lessee . . ."

"(14). . . . The parties . . . further agree to exchange with each other copies of their respective public liability and property damage insurance contracts and any endorsements issued thereto, or satisfactory proof of the same, and such copies of exchanged insurance contracts and endorsements shall be furnished each of the insurance carriers of the parties to this agreement."

The contract was immediately approved by the North Carolina Utilities Commission.

7. Subsequent to the execution of the contract of 29 May, 1947, Queen and Carolina operated six round trips daily between Raleigh and Asheville in the manner specified in the contract. They did this for the express purpose of effectuating the contract.

8. Subsequent to the execution of the contract of 29 May, 1947, Queen caused its insurer, Virginia, to attach an endorsement to its policy of liability and property damage insurance, and to issue a certificate to Carolina concerning its action in that respect. Carolina accepted the endorsement and certificate of Virginia as a performance by Queen of Queen's obligations to Carolina as lessor under paragraphs 12 and 14 of the contract of 29 May, 1947.

9. The endorsement of Virginia made these stipulations: (1) "It is understood and agreed between the named insured (Queen City Coach Company) and the company (Virginia Surety Company) that the Carolina Coach Company is included under this policy as an additional insured to the extent of protection against liability for bodily injury and property damage while Queen City Coach Company . . . (is) . . . operating its equipment under permit or franchise granted to or held by said Carolina Coach Company pursuant to an agreement entered into on 29 May, 1947, and subsequent amendments thereto"; (2) "It is further agreed that this policy shall cover accidents involving equipment owned by Queen City Coach Company . . . regardless of whether or not such equipment is operating under rights of franchise granted to or held by (Queen City Coach Company) . . ."; and (3) "It is also agreed that coverage is not provided to the Carolina Coach Company while its equipment is operating under rights or franchises granted to or held by Queen City Coach Company . . . regardless of all other provisions of this policy to the contrary." The certificate of Virginia was couched in the identical language employed in the first and second stipulations of its endorsement.

10. Subsequent to the execution of the contract of 29 May, 1947, Carolina caused its insurers, Liberty and Lloyds, to attach endorsements to their policies of liability and property damage insurance, and to issue certificates to Queen concerning their actions in that respect. Queen accepted the endorsements and certificates of Liberty and Lloyds as a performance by Carolina of Carolina's obligations to Queen as lessor under paragraphs 12 and 14 of the contract of 29 May, 1947.

11. The endorsement of Liberty made this stipulation: "It is understood and agreed between the named insured (Carolina Coach Company) and the company (Liberty Mutual Insurance Company) that Queen City Coach Company . . . (is) . . . included under this policy as additional insured . . . while equipment owned by the named insured (Carolina Coach Company) is being operated under permits or franchises granted to or held by said Queen City Coach Company . . ." The certificate of Liberty stated, in substance, that the endorsement on its policy contained special provisions for the benefit of Queen in respect to "buses operated under contract dated 5/29/47." Carolina had two policies of insurance in Lloyds. The endorsements and certificates of Lloyds made this stipulation and this recital in respect to each of its policies: "It is understood and agreed between Carolina Coach Company and Underwriters (Lloyds of London) that Queen City Coach Company . . . (is) . . . included under this policy as additional assured . . ., but only in respect of equipment owned by Carolina Coach Company while such equipment is being

operated under permits or franchises granted to or held by Queen City Coach Company . . ."

12. The contract of 29 May, 1947, and the several policies and endorsements hereinbefore mentioned were in effect on 25 December, 1947.

13. On the morning of 25 December, 1947, a Carolina bus operated by Glenn Winecoff, a Carolina driver, left Asheville for Raleigh on a regularly scheduled trip in conformance to the contract of 29 May, 1947. The Carolina bus became disabled near Swannanoa, a point on Queen's franchise route.

14. Pursuant to a request from Winecoff, Queen ordered a Queen bus operated by James B. Robinson, a Queen driver, to proceed over its franchise route from Asheville to the disabled Carolina bus for the purpose of relieving the Carolina bus of its passengers. While proceeding along Queen's franchise route on the way from Asheville to the disabled Carolina bus, the Queen bus driven by Robinson collided with an automobile operated by George O. Perkins and occupied by Kenneth T. Perkins, killing George O. Perkins and injuring Kenneth T. Perkins.

15. Claims were made against Queen for the death of George O. Perkins and the bodily injury of Kenneth T. Perkins. Queen forthwith notified Carolina, Liberty, Lloyds, and Virginia of the claims, and demanded that they assume liability for them. Carolina, Liberty, Lloyds, and Virginia disclaimed liability, and refused to adjust the claims. Maud T. Perkins, Administratrix of George O. Perkins, and Kenneth T. Perkins then sued Queen and Robinson in separate actions in the Superior Court of Buncombe County for damages for the death of George O. Perkins and the bodily injury of Kenneth T. Perkins. Queen made demand on Carolina, Liberty, Lloyds, and Virginia to defend the actions. Each of them refused to do so. Queen thereupon retained competent defense counsel, who filed answers in behalf of Queen and Robinson denying liability to the administratrix of George O. Perkins and Kenneth T. Perkins.

16. Queen procured orders making Carolina a party in each Buncombe County action. Queen filed third-party complaints against Carolina in these cases, alleging that Robinson was driving the Queen bus for Carolina's benefit under Carolina's direction at the time of the collision and demanding recovery over against Carolina by way of indemnity or contribution for any judgments the Administratrix of George O. Perkins and Kenneth T. Perkins might obtain against Queen. Carolina answered the third-party complaints, denying the factual averments made by Queen and pleading the contract of 29 May, 1947, in bar of the relief over sought by Queen. Queen replied, admitting the existence of the contract of 29 May, 1947, and asserting that Carolina put an incorrect interpretation upon it.

17. The Buncombe County actions were heard before Judge John H. Clement at the November Term, 1948, of the Superior Court of Buncombe County. Judge Clement sustained demurrers *ore tenus* interposed by Carolina to Queen's third-party complaints and replies, and dismissed both cases as to Carolina. He submitted to a jury, however, the issues of fact joined between the Administratrix of George O. Perkins and Kenneth T. Perkins, on the one hand, and Queen and Robinson, on the other. Although it gave notices of appeals to the Supreme Court from the dismissals of its claims against Carolina, Queen did not perfect such appeals, and the same were docketed and dismissed in the Supreme Court under Rule 17 at the Spring Term, 1949.

18. Maud T. Perkins, Administratrix of George T. Perkins, recovered a verdict and judgment against Queen and Robinson for $26,560.00 on account of the death of her intestate; and Kenneth T. Perkins recovered a verdict and judgment against Queen and Robinson for $6,500.00 on account of his bodily injury.

19. On 20 December, 1948, Queen advised Carolina, Liberty, Lloyds, and Virginia that it proposed to settle the "Maud T. Perkins and Kenneth T. Perkins judgments totaling $33,060.00 plus interest for $30,000.00"; that Queen intended to demand reimbursement from Carolina and its insurers, Liberty and Lloyds; and that they should protest without delay to Queen if they deemed the proposed settlement unreasonable. Counsel for Carolina forthwith informed Queen that Carolina denied all liability to Queen in connection with the Perkins cases.

20. On 27 December, 1948, Queen paid $30,369.35 into the office of the Clerk of the Superior Court of Buncombe County in full settlement of the judgments ($30,000.00) and the costs ($369.35) in the cases brought by the Administratrix of George O. Perkins and Kenneth T. Perkins against Queen and Robinson.

21. Virginia has recognized at all times that the policy of liability and property damage insurance issued by it to Queen covered the Queen bus involved in the accident in which George O. Perkins was killed and Kenneth T. Perkins was injured. Virginia has nevertheless refused to accept responsibility for the accident and the resultant claims against Queen on the ground that its liability in the premises is secondary to a similar liability resting on Carolina and its insurers, Liberty and Lloyds. The rationale of Virginia is this: Virginia's policy specifies, in essence, that the insurance protection which it affords Queen is effective only in case no other insurance is available. Carolina bound itself by the contract of 29 May, 1947, to furnish Queen other insurance protection against the loss occasioned by the collision of the Queen bus and the Perkins car. If the policies and endorsements of Liberty and Lloyds cover this loss, they afford Queen other available insurance, and render

Liberty and Lloyds primarily liable to Queen; and if the policies and endorsements of Liberty and Lloyds do not cover this loss, Carolina has breached its contractual obligation to furnish Queen other insurance protection, and for that reason is primarily liable to Queen.

22. Queen consulted Virginia before paying the judgments and costs in the Buncombe County actions. During the consultation, Queen and Virginia entered into a contract whereby Virginia agreed to loan Queen a sum of money equal in amount to the sums to be expended by Queen in paying the judgments and costs, and whereby Queen agreed to repay the loan to Virginia in case, and only in case, it should be judicially determined that the primary obligation for the accident and the resultant Buncombe County suits rested on Carolina or its insurers, Liberty and Lloyds. Virginia advanced $30,369.35 to Queen pursuant to this contract. At the same time Virginia made direct payment of counsel fees to the attorneys who defended the Buncombe County actions.

23. Subsequent to all the events depicted above, Queen brought the present action against Carolina, Liberty, Lloyds, and Virginia in the Superior Court of Mecklenburg County. Queen sought primarily to recover the expenditures made in connection with the Buncombe County suits from Liberty and Lloyds on the theory that they were liable for the outlays under the terms of their policies and endorsements. Queen sought secondarily to recover the expenditures from Carolina alone on the theory that Carolina obligated itself by the contract of 29 May, 1947, to provide liability insurance to protect Queen against loss arising out of accidents similar to that resulting in the Buncombe County cases, and that Carolina breached its obligation to furnish such insurance if the policies and endorsements of Liberty and Lloyds did not cover the accident and the resultant suits. Queen prayed finally for an adjudication that Virginia was liable for the expenditures in case it should be adjudged that legal accountability for them did not rest on Carolina or its insurers. Virginia made common cause with Queen against Carolina and its insurers. Carolina, Liberty, and Lloyds filed answers, denying the validity of the positions taken by Queen and Virginia. Each of them asserted that sole responsibility for the expenditures in suit rested on Virginia as insurer of Queen. Carolina pleaded, moreover, that the dismissals of the third-party complaints in the Buncombe County actions rendered the claims of Queen against Carolina res judicata.

24. When this action was called for trial at the October Term, 1952, of the Superior Court of Mecklenburg County, the parties waived trial by jury and submitted the issues of fact to Judge Susie Sharp, who heard the evidence and made findings of fact harmonizing with the matters recited in this statement. Each finding was supported by testimony. Judge Sharp concluded as matters of law on her findings of fact that the

policies and endorsements of Liberty and Lloyds did "not cover the liability of the Queen City Coach Company for the result of the accident of 25 December, 1947, involving the collision with the Perkins car"; that the contract of 29 May, 1947, obligated Carolina "to furnish to Queen City Coach Company insurance protection only with respect to accidents in which there might be involved buses owned by Carolina Coach Company and operating in the franchise territory of Queen City Coach Company"; and that Carolina "was not guilty of any breach of any contractual obligation in failing to furnish . . . to Queen City Coach Company . . . insurance . . . which would cover the liability of the Queen City Coach Company for damages because of the collision with the Perkins car on December 25, 1947." Judge Sharp adjudged on her findings and conclusions that Queen was not entitled to recover anything from Carolina, Liberty, Lloyds, or Virginia. Virginia excepted and appealed, asserting by its assignments of error that Judge Sharp erred in her findings of fact, conclusions of law, and adjudication.

*Arch T. Allen and Joyner & Howison for defendant Carolina Coach Company, appellee.*

*McDougle, Ervin, Horack & Snepp for defendant Virginia Surety Company, appellant.*

*Jones & Small for defendants Liberty Mutual Insurance Company and Lloyds of London, appellees.*

ERVIN, J. Carolina, Liberty and Lloyds move at the outset to dismiss the appeal on the ground that judgment was rendered in favor of Virginia at the trial and that in consequence Virginia has no right to appeal. The movers find color of support for their position in the recital of the judgment that Queen is not entitled to recover anything from Virginia. The judgment is to be interpreted, however, in the light of the pleadings, the issues, the findings of fact, and the conclusions of law. *Berrier v. Commissioners,* 186 N.C. 564, 120 S.E. 328; *Weeks v. McPhail,* 129 N.C. 73, 39 S.E. 732; *Taunton v. Dobbs,* 240 Ala. 287, 199 So. 9; *Aloe v. Lowe,* 298 Ill. 404, 131 N.E. 612; *Hays v. Madison County,* 274 Ky. 116, 118 S.W. 2d 197; *Attorney General v. New York, N. H. & H. R. Co.,* 201 Mass. 370, 87 N.E. 621; *Western Paving Co. v. Board of Com'rs of Lincoln County,* 183 Okl. 281, 81 P. 2d 252; 49 C.J.S., Judgments, sections 438, 439. When this is done, it is manifest that the judgment adjudicates that Carolina, Liberty and Lloyds did not contract to make good to Queen the loss resulting from the collision between the Queen bus and the automobile driven by George O. Perkins; that in consequence Queen was not obligated to repay Virginia the moneys advanced to Queen by Virginia; and that the advancement of the moneys to Queen by Vir-

ginia was tantamount to a performance by Virginia of its obligation as Queen's insurer. This being true, the judgment put liability for the loss occasioned by the accident on Virginia alone, and made Virginia a "party aggrieved" within the purview of the statute prescribing who may appeal. G.S. 1-271.

Virginia makes these assertions by its assignments of error:

1. That the trial judge erred in making certain findings of fact.

2. That the trial judge erred in adjudging that the policies and endorsements did not bind Liberty and Lloyds to indemnify Queen for the loss arising out of the collision of the Queen bus and the Perkins car.

3. That the trial judge erred in holding that the contract of 29 May, 1947, did not obligate Carolina to furnish Queen liability insurance protection against the loss occasioned by the collision of the Queen bus and the Perkins car, and that in consequence Carolina did not breach an obligation to Queen in failing to provide Queen with such insurance protection.

The assignments of error based on exceptions to findings of fact are unavailing. The parties waived trial of the issues of fact by a jury in conformity with G.S. 1-184. The findings of fact of the trial judge are supported by competent evidence, and for that reason are binding on the parties. *Mitchell v. Barfield,* 232 N.C. 325, 59 S.E. 2d 810; *Burnsville v. Boone,* 231 N.C. 577, 58 S.E. 2d 351; *Griggs v. Stoker Service Co.,* 229 N.C. 572, 50 S.E. 2d 914; *Poole v. Gentry,* 229 N.C. 266, 49 S.E. 2d 464.

We turn to the courtroom scene in the *Merchant of Venice* for the conclusive answer to the argument of Virginia that the policies and endorsements imposed on Liberty and Lloyds contractual duties to make good to Queen the loss arising out of the collision of the Queen bus and the Perkins car. It was not "so nominated in the bond."

When the policies of Liberty and Lloyds were originally issued, they insured Carolina against legal liability for loss caused by the operation of Carolina's motor vehicles. The endorsements of Liberty and Lloyds did not extend the coverage of their policies to Queen's motor vehicles. The endorsements merely made Queen an additional insured under the policies of Liberty and Lloyds, and granted to Queen as such additional insured liability insurance protection against loss arising out of the operation of Carolina's motor vehicles on Queen's franchise route.

Virginia lays hold on paragraph 11 and a portion of paragraph 12 of the contract of 29 May, 1947, to sustain its contention that Carolina obligated itself by the contract to furnish Queen liability insurance protection against the loss occasioned by the collision of the Queen bus with the Perkins car, and that Carolina breached this contractual obligation to Queen if the policies and endorsements furnished by Carolina did not,

COACH CO. *v.* COACH CO.

in fact, require Liberty and Lloyds to indemnify Queen for this particular loss.

Virginia advances these arguments on this phase of the case: Carolina bound itself to carry liability insurance to protect Queen from liability arising "as a result of the operation" of Carolina's buses over Queen's franchise route pursuant to the contract. The Carolina bus was on a trip over Queen's franchise route for which Carolina was responsible under the contract at the time of its disablement. Since the Queen bus was going to the relief of the disabled Carolina bus at the time of the collision with the Perkins car, the resultant liability of Queen for the injuries to the occupants of the Perkins car arose "as a result of the operation" of Carolina's bus over Queen's franchise route pursuant to the contract. Hence, Carolina obligated itself by the contract to furnish Queen liability insurance protection against the loss occasioned by the collision of the Queen bus with the Perkins car.

The arguments of Virginia on this aspect of the controversy resemble "the play-bill which is said to have announced the tragedy of Hamlet, the character of the Prince of Denmark being left out." They ignore the crucial stipulation of paragraph 12 of the contract of 29 May, 1947, that the liability insurance to be carried by the *lessor* was to be on *buses of lessor*.

When all is said, the contract of 29 May, 1947, imposed these obligations, and these obligations only, on Carolina and Queen in respect to insurance: (1) It obligated Carolina to insure both itself and Queen against legal liability for losses caused by the operation of Carolina's buses on Queen's franchise route; and (2) it obligated Queen to insure both itself and Carolina against legal liability for losses caused by the operation of Queen's buses on Carolina's franchise route. This being so, the trial judge rightly ruled that Carolina did not contract to provide Queen with liability insurance protection against the loss arising out of the collision of the Queen bus and the Perkins car.

Our interpretation of the contract of 29 May, 1947, is identical with that which the parties put upon it in issuing and accepting the endorsements and certificates. *Smith v. Thompson,* 210 N.C. 672, 188 S.E. 395; Williston on Contracts (Rev. Ed.), section 623. Virginia emphasized the validity of the interpretation by inserting in the endorsement to its policy the third stipulation declaring in express terms "that coverage is not provided to the Carolina Coach Company while its equipment is operating under rights or franchises granted to or held by Queen City Bus Company."

For the reasons given, the judgment is

Affirmed.