FAIRCHILD REALTY COMPANY v. SPIEGEL, INC., AND MORRISON-NEESE, INC.

(Filed 28 June, 1957.)

**1. Appeal and Error § 49—**

The findings of fact of the trial court are conclusive on appeal when supported by any competent evidence, but its conclusions of law, even though denominated findings of fact, are reviewable.

**2. Waiver § 2—**

Where a party is faced with the inconsistent choices of declaring a contract terminated by reason of breach 'or of accepting continuing benefits

under the contract, his election, with full knowledge of all the facts, to accept the continuing benefits waives his right to declare the contract terminated for such prior breach.

**3. Landlord and Tenant § 17—**

If the landlord receives rent from his tenant after full notice or knowledge of a breach of a covenant or condition in his lease, for which a forfeiture might have been declared, the acceptance of the rent constitutes a waiver of the forfeiture, which may not afterwards be asserted for that particular breach, or any other breach which occurred prior to the acceptance of the rent.

**4. Same: Landlord and Tenant § 14—Lessor held to have waived right to declare forfeiture by acceptance of rents after sublease of premises.**

The lease in question provided that lessee might not assign or sublease without the consent of lessor. The lease also provided for termination for default continuing for forty-five days after written notice by lessor to lessee of such default. Lessee assigned the lease and lessor notified lessee that it did not consent to the assignment and it would declare a forfeiture for breach of condition unless the breach was cured within the forty-five day period. Lessor refused rent tendered by the sublessee, but accepted rent from the lessee in accordance with the terms of the lease for more than a year after the expiration of the forty-five day period. *Held:* By accepting the rent after the expiration of the forty-five day period, lessor waived its right to declare forfeiture, and it was immaterial that payment of rent was made by the lessee rather than the sublessee.

HIGGINS, J., dissenting.

APPEAL by defendants from *Gwyn, J.,* November 1956 Civil Term of GUILFORD (Greensboro Division).

This action was instituted 1 December 1955. Each party by its pleading seeks a declaratory judgment determinative of its rights under a lease from plaintiff to Spiegel and by it assigned to its codefendant. A jury trial was waived. The court made detailed findings of fact. Summarized the facts found are:

Plaintiff is owner of a six-story building on Greene Street in Greensboro, N. C. On 20 October 1945 plaintiff leased this building to Spiegel, Inc., hereafter referred to as Spiegel, for a term of twelve years beginning 1 November 1945, with an option to renew for an additional term of twelve years. When the lease was made, the building was occupied by Morrison-Neese Furniture Company, hereafter referred to as Furniture Company, and had been so occupied for thirty years or more. It had conducted in said building a high-class retail furniture and decorating business. About 1 November 1945, Furniture Company sold its business, including its name and good will, to Spiegel, who continued to operate under the name of Morrison-Neese. Furniture Company had a paid-in capital in excess of $300,000. It was dissolved in 1946 or 1947.

The building was rented for $1,250 per month, plus three per cent of all sales in excess of $500,000 made from the demised property, the additional rental to be ascertained annually as of 31 October.  The provisions of the lease with respect to assignment and default are:

"ASSIGNMENT    TWENTY-THREE:  The Lessee may without the consent
AND        of the Lessor, assign or sublet, in whole or in part, the
SUBLETTING    demised premises to any successor corporation without
restrictions or to any subsidiary or affiliate upon the express condition that Lessee shall remain primarily liable for the performance of the conditions, agreements and terms of this indenture, including the payment of both minimum and additional rents, and Lessee may assign or sublet in whole or in part, the demised premises to any other person, persons or corporation, with the approval of the Lessor, which approval shall not be unreasonably withheld.

"DEFAULT    TWENTY-FOUR:  Lessee hereby agrees that if the rental
hereunder reserved be not paid within fifteen days after written notice from Lessor to Lessee, that the same has become due and was not paid, or if default be made in the performance of any of the other covenants on its part herein contained and shall continue for forty-five days after written notice thereof given to the Lessee by the Lessor, such default or breach shall, at the option of the Lessor, work a termination of this lease to the same extent and with all the legal incidents as if the term hereof had expired by lapse of time, and it shall then be lawful for the Lessor, Lessor's agent or agents, to reenter the premises and remove all persons therefrom and to repossess said premises as of Lessor's original estate, without prejudice to other rights and remedies."

Spiegel is a large corporation, rated AAA, with a net worth in excess of $44,000,000.  It has, in addition to financial strength, retail sales experience in the furniture business and other retail fields and had aggressive and competent management and sales personnel.  The rental paid by Spiegel to plaintiff approximated $35,000 per year.

In July 1955 Spiegel sold its furniture business in Greensboro, and also retail furniture stores which it operated in Scranton, Pa., Oklahoma City, Okla., and Phoenix, Ariz., to Lewittes-Helser syndicate.  The sale price of each store was based on 50% of inventory plus one dollar for fixtures and other assets except accounts receivable.  The syndicate purchasing from Spiegel created corporations to operate each of the stores which it acquired.  The corporation created to operate the store in Greensboro was defendant Morrison-Neese, Inc., a North Carolina corporation, hereafter called Morrison.  Its president was formerly Spiegel's vice-president in charge of all of its furniture business.  On 1 August 1955, Spiegel assigned the lease to Morrison.

On 26 July 1955 Spiegel wrote requesting plaintiff to assent to an assignment of the lease to Morrison. On 4 August plaintiff replied stating that it was informed Morrison had an authorized capital of $100,000 and only $3 paid in, and because of lack of satisfactory information it could not consent to the assignment. It requested additional information. On 15 August Spiegel wrote plaintiff, giving the business experience of those interested in and who would operate Morrison. The letter stated Morrison had a paid-in capital of $32,000, excellent banking connections, its backers had a net worth in excess of $1,000,000. It concluded: "In addition to the above, of course, there is a continuing liability of Spiegel, Inc., on the lease for the location. We are confident that the purchasers will do extremely well with the store and will make most satisfactory tenants."

On 15 August Morrison sent plaintiff a check for $1,250, the minimum rent for August. Plaintiff returned the check on 16 August, stating that it did not have a lease with Morrison and had not consented to the assignment by Spiegel.

On the same date plaintiff wrote Spiegel: "Due to failure to pay rent as provided in your lease of October 20, 1945, on the above captioned premises, and due to the fact that you have assigned the said lease and put another tenant into possession of the premises without our approval and consent, we hereby advise you that you have breached your lease and unless the defaults are cured within the time provided in Paragraph 24 of your said lease of October 20, 1945, we shall terminate the lease, take steps to repossess the premises, and preserve for ourselves all other legal rights and remedies provided in the lease."

On 18 August plaintiff acknowledged Spiegel's letter of 15 August giving information with respect to Morrison's financial and operating capacity. Plaintiff stated the information was inadequate. It concluded its letter thus: "We respectfully direct your attention to our letter of August 16, 1955, and wish to advise you that your letter of August 15 does not cause us to in any way alter the position expressed to you in our letter of August 16."

Spiegel promptly sent plaintiff a check for $1,250 to take the place of Morrison's check which plaintiff had refused to accept. On 19 August plaintiff acknowledged Spiegel's check for $1,250 for rent and added: "This is to advise that the said payment by you does not satisfy the defaults outlined to you in our letter of August 16, 1955, and that because of your continuing defaults and breach, our position as expressed to you in our letter of August 16 is not altered and the notice as contained in said letter is still in effect."

On 24 August Spiegel wrote plaintiff that Morrison had furnished Spiegel with guarantees on the lease assuring a net worth for Morrison and its guarantors of $800,000. It expressed the opinion that plaintiff

was acting arbitrarily in not approving the assignment, and hence it would maintain the validity of the assignment.

On 30 August plaintiff again wrote Spiegel asserting the information furnished it was inadequate for it, acting with reasonable business prudence, to approve the assignment. It stated: "But we wish to impress upon you that you made the assignment without first requesting our consent and approval, and your assignment of the lease to Morrison-Neese, Inc., without our consent and approval, is a breach of the lease. Our letter of August 16, 1955, notified you of this breach and also of your failure to pay rent as provided in the lease. Unless you cure these breaches within the time provided in the lease, we shall terminate the lease as stated in our letter of August 16, 1955."

On 27 September plaintiff wrote Spiegel: "On August 16, 1955, we served notice on you of your breach of your lease with us for the above described premises and advised you that unless the defaults are cured within the time provided in Paragraph 24 of your lease of October 20, 1945, we shall terminate the lease, take steps to repossess the premises, and preserve for ourselves all other legal rights and remedies provided in the lease.

"The time within which you may cure the defects will expire October 3, 1955.

"If the matter can be settled out of Court we do not want to bring a suit, but your refusal to furnish us with the information requested in our letter of August 30, 1955 does not leave us any alternative. Your conclusion that information would not be considered by the landlord is erroneous.

"We again request that you send us the information asked for in our letter of August 30, 1955 and again advise you that unless we are furnished with information which would justify our consent to your assignment of the lease, we shall proceed as outlined in our letter of August 16, 1955."

On 3 October Spiegel replied to plaintiff's letter of 27 September. It reiterated its position that the information furnished would suffice to satisfy a prudent business person in approving the lease. The letter concluded: "Should you take steps to repossess the premises we, of course, intend to take any and all steps necessary to resist such efforts. We are very confident that a court will uphold our position and that an arbitrary refusal of the landlord to recognize this assignment will not be sustained."

So far as the record discloses there were no further communications between plaintiff and Spiegel with respect to the assignment. Spiegel sent checks each month to plaintiff for the rent in accordance with the terms of the lease, including a check for additional rent based on sales

ending 31 October 1955. These checks were received and promptly cashed by plaintiff through September 1956.

On 16 April 1956 Morrison wrote plaintiff that as assignee of Spiegel it elected to exercise its option to extend the lease in accordance with its provisions. Plaintiff replied that it had not assented to the assignment and for that reason did not accept the letter as notice of intent to renew.

In addition to the facts stated above the court found:

"From August 16, 1955, until the trial of this case the plaintiff has consistently contended that Spiegel, Inc. assigned the lease to Morrison-Neese, Inc., without the plaintiff's consent and that the plaintiff had not unreasonably withheld such consent. On the other hand, from the inception of this matter, the defendants have both consistently contended that the assignment of the lease was valid and effective without the plaintiff's consent. These conflicting contentions of the parties could not be resolved short of litigation so long as the plaintiff, on the one hand, and the defendants, on the other, adhered to their respective positions."

"The plaintiff did not act unreasonably in withholding its approval of the assignment of the lease by Spiegel, Inc., to Morrison-Neese, Inc., because both Spiegel, Inc. and Morrison-Neese, Inc. failed to furnish to the plaintiff reasonably adequate and accurate financial information upon which the plaintiff could base a decision. The refusal of Spiegel, Inc. and Morrison-Neese, Inc. to supply the requested information justified the plaintiff in its decision to question the desirability of the assignment from the standpoint of the plaintiff."

"The plaintiff never accepted the payment of any rent from the defendant Morrison-Neese, Inc., returning to Morrison-Neese, Inc., all rent checks tendered by it. After this controversy arose between these parties with reference to assignment of the lease, the plaintiff did accept rent payments from the defendant Spiegel, Inc., taking the position that while plaintiff contended there was a default under the lease arising out of the failure of Spiegel, Inc., to secure the plaintiff's approval of the assignment, Spiegel, Inc., remained liable for the payment of rent so long as Spiegel, Inc. refused to concede that such default existed and did not surrender possession of the premises. Spiegel, Inc. paid and plaintiff accepted checks for the minimum monthly rental in the amount of $1,250.00 each for and during the months of August, 1955, through October, 1956, and also the percentage overage rental for the lease year which ended October 31, 1955. . . . During the pendency of this controversy the plaintiff has not attempted to exercise its option to terminate the lease and repossess the premises, because of uncertainty as to whether the plaintiff had the right to do so. The plaintiff has consistently contended that it has such right and the defendants have consistently contended otherwise. Until this conflict could be

resolved, the plaintiff did not exercise its option to terminate the lease. The plaintiff has brought no suit in ejectment against either of the defendants. As early as August 20, 1955, the plaintiff knew that Spiegel, Inc. had assigned the lease to Morrison-Neese, Inc., without the plaintiff's consent, but the plaintiff had no knowledge whatsoever concerning the terms and provisions of the assignment or the conditions, if any, upon which the assignment was made. A serious controversy existed between the plaintiff on the one hand and the defendants on the other as to whether the plaintiff's consent to the assignment was necessary, and neither the plaintiff nor the defendants were certain as to what their rights were in reference to this matter. The plaintiff was justified in not running the risk and uncertainty which would have been involved in an ejectment action. Therefore, the plaintiff's acceptance of the rental payments made by its lessee, Spiegel, Inc., did not constitute a waiver of the plaintiff's rights to have a judicial determination of whether Spiegel, Inc. had breached the lease by reason of the fact that the plaintiff's consent to the assignment had not been obtained. Until the time when such determination should be made, the plaintiff did not know whether it had the right to terminate the lease."

Based on its findings the court concluded that there was a *bona fide* controversy sufficient to give the court jurisdiction to render a declaratory judgment; that Spiegel had breached the lease by assigning it to Morrison without plaintiff's consent; that the assent had not been unreasonably withheld; that Spiegel did not cure the breach within the time provided by sec. 24 of the lease; and that this action was instituted with reasonable promptness. It further concluded:

"(5) The plaintiff has not yet elected to terminate the lease and it is still in force and effect between the plaintiff and the defendant Spiegel, Inc., and the plaintiff now has the right to exercise its option to terminate the lease because of said breach, if the plaintiff shall elect so to do.

"(6) The plaintiff's acceptance of the rental payments made by the defendant Spiegel, Inc., since this controversy between the parties has arisen did not constitute a waiver by the plaintiff of its position that there was a breach of the lease by the defendant Spiegel, Inc., and did not waive the plaintiff's right to seek an adjudication by this Court of the question of whether the defendant Spiegel, Inc. had breached the lease by assigning the same without the plaintiff's consent, as contended by the plaintiff, or whether the defendant Spiegel, Inc., had not breached the lease, as contended by the defendants, and the plaintiff is not thereby estopped to obtain the adjudication sought in this action."

Upon its findings and conclusions the court adjudged that plaintiff has a right to exercise its option to terminate the lease, which option plaintiff is required to exercise within thirty days. Upon the rendition

of the judgment defendants took exceptions to findings of fact and conclusions of law and to the judgment and appealed.

*Jordan & Wright for plaintiff appellee.*

*Brooks, McLendon, Brim & Holderness for defendant appellants, by Hubert Humphrey.*

RODMAN, J.   Findings of fact, when supported by any evidence, are conclusive on appeal. *Rubber Co. v. Shaw*, 244 N.C. 170, 92 S.E. 2d 799; *Reid v. Johnston*, 241 N.C. 201, 85 S.E. 2d 114; *Coach Co. v. Coach Co.*, 237 N.C. 697, 76 S.E. 2d 47.   Conclusions of law, even if stated as factual conclusions, are reviewable. *Moore v. Deal*, 239 N.C. 224, 79 S.E. 2d 507; *Allman v. Register*, 233 N.C. 531, 64 S.E. 2d 861; *Radio Station v. Eitel-McCullough, Inc.*, 232 N.C. 287, 59 S.E. 2d 779.

The parties are not in agreement with respect to what transpired at the July 1955 conference between representatives of plaintiff and representatives of defendants, called for the purpose of discussing a sale of Spiegel's furniture business and an assignment of the lease of plaintiff's building.   Defendants assert that plaintiff arbitrarily announced it would not assent to any assignment unless it could get a new lease based on 4 or 4½% of sales, with a guaranteed minimum of $25,000. Plaintiff denies this, and its witnesses testified that there was discussion of a new lease with changes to be made in the building including air conditioning; and only after that idea was abandoned was the question of an assignment of the lease discussed.   At that time defendants were notified plaintiff would require complete information with respect to the merchandising ability and financial standing of any proposed assignee before it would give its consent.

There is evidence supporting the court's finding of fact that plaintiff was not furnished information sufficient to require its assent to the assignment and that its consent was not unreasonably withheld.   The rights of the parties must be determined in the light of that established fact.

Article 23 of the lease is a restriction on lessee's right of alienation. *Rogers v. Hall*, 227 N.C. 363, 42 S.E. 2d 347.   It does not purport to be a covenant on the part of lessee.   Whether a violation of that restrictive provision comes within the provision of Article 24 which permits lessor to terminate the lease upon default by lessee of its covenants need not now be determined.   Plaintiff so asserted and has acted upon the theory that it did have that right.

Thus we are brought to the crucial question of the case: Has plaintiff, by the acceptance of rents for a period of more than a year and with knowledge that the lease had been assigned, waived any right

which it had to declare a forfeiture on account of the assignment, or may it now exercise that right?

The Court, in *Manufacturing Co. v. Building Co.,* 177 N.C. 103, 97 S.E. 718, said: "No one can be said to have waived that which he does not know, or where he has acted under a misapprehension of facts. Waiver or acquiescence, like election, presupposes that the person to be bound is fully cognizant of his rights, and that being so he neglects to enforce them, or chooses one benefit instead of another, either, but not both of which he might claim. The knowledge may be actual or constructive; but one cannot be willfully ignorant and relieve himself of a waiver because he did not know. The question of waiver is mainly one of intention, which lies at the foundation of the doctrine. Waiver must be manifested in some unequivocal manner, and to operate as such it must in all cases be designed, or one party must have so acted as to induce the other to believe that he intended to waive, when he will be forbidden to assert to the contrary."

"Election is simply what its name imports; a choice, shown by an overt act, between two inconsistent rights, either of which may be asserted at the will of the chooser alone." *Mr. Justice Holmes* in *Bierce v. Hutchins,* 205 U.S. 340, 51 L. Ed. 828.

*Stacy, J.* (later *C. J.*), in applying these principles to the case of a landlord who with knowledge of a breach accepted rents, said: "It is the generally accepted rule that if the landlord receive rent from his tenant, after full notice or knowledge of a breach of a covenant or condition in his lease, for which a forfeiture might have been declared, such constitutes a waiver of the forfeiture which may not afterwards be asserted for that particular breach, or any other breach which occurred prior to the acceptance of the rent." *Winder v. Martin,* 183 N.C. 410, 111 S.E. 708.

The rule as stated has been consistently applied in similar factual situations. *Richburg v. Bartley,* 44 N.C. 418; *Fredeking v. Grimmett,* 86 S.E. 2d 554 (W. Va.); *Whitehouse Restaurant v. Hoffman,* 68 N.E. 2d 686 (Mass.); *Hart v. Shell Oil Co.,* 116 F. 2d 598.

The case of *Woollard v. Schaffer Stores Co.,* decided by the New York Court of Appeals, reported 5 N.E. 2d 829 and 109 A.L.R. 1262, with lengthy annotations, bears close resemblance to the facts of this case. There, as here, a declaratory judgment was sought to determine the rights of the parties. There the lease contained a covenant that lessee would not sublet nor make structural changes in the building. These covenants were violated. Here the lease contains a restriction on the right to assign. This provision has been violated. There the landlord, after learning of the breach of the covenant, accepted rents with this reservation: "any rentals you may pay hereafter will be received by me only with the understanding that the same are received

without prejudice to the action which will follow your failure to comply with my notice of September 19." The notice referred to was that the lease had terminated by the breach. Here no reservation of rights was attempted by the landlord when it accepted the rent checks from the lessee. There and here rent checks were issued and accepted after suit was begun by the landlord to enforce his asserted rights. The court held that the acceptance of rent, notwithstanding the notification and reservation waived landlord's right to terminate. Here there has been no reservation attempted in accepting the rents. True the landlord refused to accept a check of the assignee, and the payments were made by lessee. That fact makes no difference. See Landlord and Tenant, 32 Am. Jur. sec. 883, 51 C.J.S. sec. 117 (2) (a).

Every fact necessary to establish waiver in accordance with the definition given in *Manufacturing Co. v. Building Co., supra,* is present here. Plaintiff, when it wrote its letter of 16 August had knowledge of the assignment if not the details of the assignment. It knew the provisions of the lease and that the assignment did not have lessor's approval. It notified defendant Spiegel: "We shall terminate the lease, take steps to repossess the premises and preserve for ourselves all other legal rights and remedies provided in the lease." In several letters written thereafter it reiterated its intent to terminate the lease. It informed Spiegel that its opportunity to cure the breach expired on 3 October. On that date Spiegel notified plaintiff that it would stand by its position. Prior to 3 October 1955 plaintiff did not know whether the breach would be cured or not. Hence, acceptance of rents in August and September 1955 did not waive its rights, but when 3 October came and passed, plaintiff was required to elect whether it would continue with the contract or maintain its position that there was no longer any contractual relations existing between it and the defendants. Two roads were open. Plaintiff had the right to choose which route it would take. Plaintiff says that the rent payments were but the contractual obligation of Spiegel, and hence there was no waiver of its rights; but Spiegel had no contractual obligation if no contract any longer existed. Its obligation to pay rents was based on the continued existence of the contract. If and when the contract terminated and Spiegel or Morrison remained in possession, their possession was wrongful, and plaintiff was entitled to recover from them damages for wrongful possession, not rent. Damages and rent are different. *Stacy, C. J.,* speaking in *Seligson v. Klyman,* 227 N.C. 347, 42 S.E. 2d 220, said: "The law is well settled that from a lessee who wrongfully holds over, the landlord is not only entitled to obtain possession of his property, but also to recover indemnity for its wrongful detention. *McGuinn v. McLain,* 225 N.C. 750, 36 S.E. 2d 377; *Allen v. Taylor,* 96 N.C. 37, 1 S.E. 462; Anno. A.L.R. 386. This is not necessarily the stipulated rent in a lease for a time

prior thereto. . . . Indemnity or compensation, rather than rent, would seem to be the proper measure of recovery."

The acceptance of rents subsequent to 3 October 1955 including the substantial sum in excess of the minimum paid for the use of the property for the year ending 31 October 1955 which included three months' occupancy by Morrison constituted a waiver of the breach and a recognition by plaintiff that the contract remained in effect. After this action was instituted and after the defendants had expressly pleaded the acceptance of rents as a waiver of plaintiff's right to assert a forfeiture, plaintiff continued to accept rents for several months and practically up to the time of the trial.

The doctrine of election and waiver has been applied in other factual situations where one is required to make a choice. Illustrative are *Hutchins v. Davis,* 230 N.C. 67, 52 S.E. 2d 210; *Parker v. White,* 235 N.C. 680, 71 S.E. 2d 122; *Benton v. Alexander,* 224 N.C. 800; *Macbeth-Evans Glass Co. v. General Electric,* 246 F. 695.

While plaintiff, by the acceptance of rent, has waived its right to object to the assignment, it has not released Spiegel of any of its contractual obligations. Its refusal to accept payment of the rent from Morrison was notice to Spiegel that it would be held to a compliance with all of its contractual obligations. Spiegel has properly recognized its responsibility to plaintiff under the contract. It must, of course, comply with each of its contractual obligations. *Bank v. Bloomfield, post,* p. 492; *Childs v. Warner Bros. Southern Theatres,* 200 N.C. 333, 156 S.E. 923; *Connolly v. Rogers,* 100 A.L.R. 552, and annotations; *Maybury Shoe Co. v. Rochester Factory Holding Co.,* 185 A. 654 (N.H.); 32 Am. Jur. 313, 314; 51 C.J.S. 574.

There was error in the conclusion that plaintiff had not waived its right to declare a forfeiture and that it now had the option of declaring a forfeiture. On the facts found the court should have concluded that plaintiff had waived its right to object to the assignment, that the contractual relationship created by the original lease, with the obligations there assumed by Spiegel and plaintiff continued in full force and effect.

Error and remanded.

HIGGINS, J., dissenting: The plaintiff had a rental contract with Spiegel which called for the payment of $1,250 per month plus a percentage of the sales above a fixed amount. The total annual rental amounted to about $35,000. The lessor is a large corporation with a net worth of more than $40,000,000.00, with vast experience and a history of splendid success in the retail sales of furniture. The plaintiff is and has been willing to continue this rental contract with Spiegel.

However, this controversy arose by reason of the refusal of the lessor to approve a sublease to Morrison-Neese, a new corporation with

$32,000 capital and its prospects of success questionable. Approximately two-thirds of the plaintiff's rent came from the percentage on sales. The plaintiff, therefore, has a vital interest in the amount of sales. It cannot in good conscience be expected to approve a transfer of the business to another tenant whose prospects are doubtful. The plaintiff refused to receive rent from the sub-lessee but continued to receive payments from the original lessee. In my opinion the trial court's finding that the plaintiff had not waived its right to refuse approval of the transfer is supported by competent evidence.

There is some question about the form of the judgment. I vote to modify and affirm.