CLEO O. GREENE, ET AL., PETITIONER-APPELLANTS v. THE TOWN OF VALDESE, ET AL., RESPONDENT-APPELLEES; IN RE: ANNEXATION ORDINANCE OF THE TOWN OF VALDESE

No. 4PA82

(Filed 2 June 1982)

1. **Municipal Corporations § 2.3— annexation—character of area to be annexed— compliance with statute**

   In order to establish noncompliance with G.S. § 160A-36(d), petitioners had to show two things: (1) that the boundary of the annexed area did not follow natural topographic features, and (2) that it would have been practical for the boundary to follow such features. Upon showing that a large portion of the area to be annexed followed "tree lines" and not "natural topographic features" within the meaning of the statute, the petitioners met the first step; however, petitioners failed to carry their burden of showing that the boundary of the annexed area could *practically* have been drawn along ridge lines, creeks, and streams as prescribed by statute, and where to follow natural topographic features would convert an area which would otherwise meet the statutory test of G.S. 160A-36(b) and (c) into an area that no longer satisfies those requirements, the drawing of boundaries along topographic features is no longer "practical," within the meaning of the language of the statute.

2. **Municipal Corporations § 2.6— sewer service to annexed area—compliance with statutory requirements**

   The trial court properly found that a town's plan for extending sewer services to an annexed area complied with the statutory requirements of G.S.

160A-35(3)(b) where it was clear that any current or future resident of the annexed area who could not be served by sewer lines would receive septic tank maintenance service at the same cost as sewer service and where the record indicated that the substitute septic tank service proposed by the town was already being performed within the town for residents in low-lying areas where sewer lines could not provide proper drainage outflow.

**3. Municipal Corporations § 2.4— annexation—standing to attack agreement between town and area not annexed**

Petitioners had no standing to question the constitutionality of the town's agreement with two corporations concerning a delay in annexation of their property where petitioners failed to allege some direct injury in fact.

Justice CARLTON dissenting.

Justice EXUM joins this dissenting opinion.

APPEAL by petitioners pursuant to G.S. 160A-38(h) from the judgment of *Lamm, J.,* presiding at the 26 May 1981 session of Superior Court, BURKE County.

On 3 November 1980 the Valdese Town Council adopted a resolution of intent to annex the Laurel Road Section adjacent to the Town. On 1 December the Council adopted a report outlining plans for extending municipal services to the annexation area. A properly constituted public hearing was held at which various Laurel Road residents voiced their preferences on the question of annexation. Mr. John Cathey spoke on behalf of Duracell International, a company which operated an industrial plant in the area being considered for annexation on land leased from the Crescent Land and Timber Company. He stated that the annexation came as a surprise to Duracell and requested that the Duracell property not be annexed. At the 5 January 1981 meeting of the Town Council, an agreement was reached between the Town and Crescent and Duracell whereby the Crescent/Duracell property was deleted from the annexation upon the condition that Duracell and Crescent agree to petition for voluntary annexation of the property in three separate areas within the next three years. The Council adopted an ordinance annexing the remainder of the Laurel Road Section at the same meeting.

Petitioners sought judicial review in the Superior Court. The court heard the evidence of petitioners and respondent Town and affirmed the annexation ordinances. We granted petitioners' petition for discretionary review prior to determination by the Court of Appeals on 14 January 1982.

*Herbert L. Hyde and G. Edison Hill for appellants.*

*Mitchell, Teele, Blackwell & Mitchell, by H. Dockery Teele, Jr., and Hugh A. Blackwell, for appellee.*

BRANCH, Chief Justice.

[1] By their first assignment of error, petitioners contend that the trial court erred in holding that respondent Town complied with the provisions of G.S. 160A-36(d) in fixing the area to be annexed.

G.S. 160A-36 provides:

§ *160A-36. Character of area to be annexed.*—(a) A municipal governing board may extend the municipal corporate limits to include any area which meets the general standards of subsection (b), and which meets the requirements of subsection (c).

(b) The total area to be annexed must meet the following standards:

(1) It must be adjacent or contiguous to the municipality's boundaries at the time the annexation proceeding is begun.

(2) At least one eighth of the aggregate external boundaries of the area must coincide with the municipal boundary.

(3) No part of the area shall be included within the boundary of another incorporated municipality.

(c) The area to be annexed must be developed for urban purposes. An area developed for urban purposes is defined as any area which is so developed that at least sixty percent (60%) of the total number of lots and tracts in the area at the time of annexation are used for residential, commercial, industrial, institutional or governmental purposes, and is subdivided into lots and tracts such that at least sixty percent (60%) of the total acreage, not counting the acreage used at the time of annexation for commercial, industrial, governmental or institutional purposes, consists of lots and tracts five acres or less in size.

> (d) *In fixing new municipal boundaries, a municipal governing board shall, wherever practical, use natural topographic features such as ridge lines and streams and creeks as boundaries,* and if a street is used as a boundary, include within the municipality developed land on both sides of the street. (Italics added.)

Petitioners do not attack the annexation on the basis of any lack of compliance with subsections (a), (b), or (c) of the above statute but argue that the Town Planner and the municipal governing board violated the italicized portion of subsection (d) by failing to follow natural topographic features in drawing the boundary of the annexed area.

> As a general rule it is presumed that a public official in the performance of his official duties "acts fairly, impartially, and in good faith and in the exercise of sound judgment or discretion, for the purpose of promoting the public good and protecting the public interest. [Citation omitted.] The presumption of regularity of official acts is rebuttable by affirmative evidence of irregularity or failure to perform duty, but the burden of producing such evidence rests on him who asserts unlawful or irregular conduct. The presumption, however, prevails until it is overcome by . . . evidence to the contrary. . . . Every reasonable intendment will be made in support of the presumption. . . ." *Huntley v. Potter,* 255 N.C. 619, 122 S.E. 2d 681 (1961); *accord, Styers v. Phillips,* 277 N.C. 460, 178 S.E. 2d 583 (1971). Hence the burden is on the petitioner to overcome the presumption by competent and substantial evidence. 6 N.C. Index 2d, Public Officers, § 8 (1968).

*In re Annexation Ordinance,* 284 N.C. 442, 452, 202 S.E. 2d 143, 149 (1974).

> In order to establish noncompliance with the above statute, petitioners must show two things: (1) that the boundary of the annexed area does not follow natural topographic features, and (2) that it would have been practical for the boundary to follow such features.

> Our examination of this record discloses that the total external boundary of the annexed area was 22,402 feet. Of this, 6,100

feet of the boundary was contiguous to the Town's existing boundary, leaving 16,302 feet of newly drawn boundary involved in the annexation. Approximately 1,600 feet of this boundary followed the meanders of creeks and streams, thereby clearly complying with the statute. A somewhat larger portion of the boundary followed tree lines. The remainder of the boundary followed no topographical features.

Since the statute does not specifically list tree lines, as it does creeks and streams, as acceptable "natural topographic features," we are confronted with the question of whether tree lines constitute "natural topographic features" within the meaning of the statute's requirement. We think not.

As petitioners' witness testified:

Quite often tree lines follow natural topographic features. It is true that is the reason a lot of people originally divided up lines along natural topographic features.

A tree line is where people stopped cutting trees. I imagine that if people hadn't gone in and cut trees, there wouldn't be a tree line. The absence of the trees on one side shows often the work of people rather than nature.

To satisfy the requirement of G.S. 160A-36(d), tree lines must not only *follow* natural topographic features, they must actually *be* such. The fact that all the tree lines followed in establishing this boundary also coincide precisely with perfectly straight property lines strongly suggests that man and not nature determined the location of these tree lines. We believe, moreover, that the impermanent nature of a tree line distinguishes it from a ridge line or a stream or creek as a natural or desirable feature upon which to base a boundary.

The deciding factor, however, contributing to our opinion that the term "natural topographic features" does not encompass tree lines is our consideration of the legislative intent behind the adoption of the statute's requirement that new boundaries follow natural topographic features where practical. The legislative history of this portion of G.S. 160A-36(d) suggests that the reason for its inclusion was the legislature's concern that the full range of municipal services be available to citizens in the annexed area. Recognizing that water, and particularly, sewer services are

necessarily limited by natural drainage boundaries, the Municipal Government Study Commission, whose recommendations were followed in establishing our present annexation procedures, included topography as an important consideration to be incorporated into the new statutory scheme of annexation. *See Report of the Municipal Government Study Commission* (Supp. Rep. 1959). In order to ensure consideration of such topographic features the portion of G.S. 160A-36(d) under consideration was enacted, specifically enumerating certain features which create natural drainage boundaries. Because tree lines have no bearing on natural drainage boundaries, or for that matter, impose no effective limitation on a municipality's ability to extend any of its major services, we hold that tree lines are not the sort of "natural topographic boundaries" which the legislature intended municipalities to follow in establishing the boundaries of areas to be annexed.

When tree lines are excluded, only 1,600 feet of the 16,302 foot boundary of the annexed area may be said to follow "natural topographic features." The evidence is thus uncontroverted that over 90 percent of the boundary did not follow natural topographic features. With regard to this portion of the boundary, we must now examine the record to determine the *practicality* of following such features in establishing the boundary presently under consideration.

Although our research has not disclosed a specific definition of this term in our own cases, we find that the word "practical" has been adequately defined by the Supreme Court of South Carolina as "that which is possible of reasonable performance." *Woody v. South Carolina Power Co.*, 202 S.C. 73, 81, 24 S.E. 2d 121, 124 (1943); *Locklear v. Southeastern Stages, Inc.*, 193 S.C. 309, 316, 8 S.E. 2d 321, 324 (1940). *Accord Moore v. Wilder*, 66 Vt. 33, 28 A. 320 (1893) ("reasonable"); *Kline v. Johannesen*, 249 Wis. 316, 24 N.W. 2d 595 (1946) ("reasonable").

Our examination of the record reveals that petitioners presented no evidence on the practicality or reasonableness of following topographic features in establishing the boundary. Indeed, the only evidence on the question of practicality was presented by respondent Town to the effect that in order to follow natural topographical features in establishing the boundary

of the annexed area it would be necessary to include expanses of open, undeveloped land which lay contiguous to the annexed area and outside the proposed boundary, but inside the nearest ridge line, stream, or creek. Petitioners do not contest this evidence but admit in their brief that "Respondent Town could not find an area that would meet the statutory subdivision and use tests if it . . . [were to] follow natural topographic features."

We are of the opinion that the words "wherever practical" were included in G.S. 160A-36(d) to meet just such an eventuality as we have before us in this case. The intent of the Legislature controls the interpretation of a statute. The language of subsection (a) of G.S. 160A-36 makes it clear that a municipality may annex any area which meets the general standards of subsection (b) and the requirements of subsection (c). *Lithium Corp. v. Bessemer City*, 261 N.C. 532, 135 S.E. 2d 574 (1964) (decided before G.S. 160-453.4 was recodified as G.S. 160A-36). We emphasize that the provisions of subsection (d) of G.S. 160A-36 contain no mandatory standards or requirements for annexation. Where the boundary of the annexed area, which meets the subdivision and use test of G.S. 160A-36(b) and (c), can be established along ridge lines, streams, and creeks without defeating the area's compliance with the other portions of G.S. 160A-36 the boundary must follow such features. Where, however, to follow natural topographic features would convert an area which would otherwise meet the statutory tests of G.S. 160A-36(b) and (c) into an area that no longer satisfies those requirements, the drawing of boundaries along topographic features is no longer "practical," i.e., not "possible of reasonable performance" within the meaning of the language of the statute.

Petitioners in instant case failed to carry their burden of showing that the boundary of the annexed area could *practically* have been drawn along ridge lines, creeks, and streams. To the contrary, in light of all the evidence, it appears that it would not have been practical to have followed such lines in establishing the boundary because to follow such features would have effectively defeated the proposed annexation which otherwise met the mandatory provisions of G.S. 160A-36. We are of the opinion that it was not the intent of the Legislature to defeat the annexation of an area which was otherwise ripe for annexation because of the

directory language contained in G.S. 160A-36(d). We therefore overrule this assignment of error.

Petitioners next argue that it was error for the trial court to allow respondent's former Town Planner to testify that, in fixing the new boundary, there were no practical topographic features to follow other than the ones actually followed. We agree that this testimony went to one of the ultimate facts to be determined by the court and should not have been allowed into evidence. However, in view of our interpretations of subsection (d) of G.S. 160A-36 and the abundance of competent evidence before the court to the effect that drawing the boundaries along natural topographic features would be impractical because to do so would defeat the annexation of an otherwise suitable area, we hold that the admission of this evidence did not constitute prejudicial error. This holding is buttressed by the fact that the trial judge was sitting as a judge and jury and in such cases it is presumed that he disregarded any incompetent evidence that might have been admitted. *Highway Commission v. Thornton*, 271 N.C. 227, 156 S.E. 2d 248 (1967). Further, petitioners have failed to carry their burden of showing noncompliance with the provisions of subsection (d) of G.S. 160A-36.

[2] Two of the petitioners' assignments of error relate to the Town's plan for extending sewer service to the annexed area. The first of these is directed to the trial court's following finding of fact:

> 13. That the sewer service proposed in the Annexation Report (Respondent's Exhibit 1), can be provided to all current residents of the area to be annexed; that there are certain undeveloped areas East [sic] of Laurel Road that may not be served by the sewer lines proposed in the Annexation Report, but in these areas the report provides, when necessary, for Respondent to provide septic tank maintenance service; that said proposed sewer lines and septic tank maintenance service are in accord with the policies of Respondent currently in effect within the municipality for extending sewer service to its residents.

The second is to the conclusion of law, based upon the above finding, that the Town's plan for extending services to the annexed area complied with statutory requirements.

Petitioners assert that all current residents will not be served by sewer lines. It is unclear from the evidence whether all current residents will be served by sewer lines or not. It is clear, however, that any current or future resident of the annexed area who cannot be served by sewer lines will receive septic tank maintenance service at the same cost as sewer service. Petitioners urge that such substitute service is not sufficient to comply with the statutory mandate that water and sewer lines be extended into a newly annexed area so that property owners "will be able to secure public water and sewer services *according to the policies in effect in such municipality* . . . ." G.S. 160A-35(3)(b) (Emphasis added.)

The record before us indicates that the substitute septic tank service proposed by the Town in low-lying areas of the annexed area was already being performed within the Town for residents in low-lying areas where sewer lines could not provide proper drainage outflow. The evidence was that "[t]here is no difference between the plan for services contained in the annexation report for providing septic tank services for homes that sewer lines cannot be run for and services presently being supplied to houses within the Town of Valdese in which sewer lines cannot be run." As this Court has noted, "Providing a *nondiscriminating* level of services within the statutory time is all that is required." *Moody v. Town of Carrboro*, 301 N.C. 318, 328, 271 S.E. 2d 265, 272 (1980) (Emphasis added.)

The trial court's finding of fact number 13 is fully supported by competent evidence and is therefore binding on us. *Humphries v. City of Jacksonville*, 300 N.C. 186, 265 S.E. 2d 189 (1980). Further, the challenged conclusion, under the facts found, is required by our case law. *Montgomery v. Montgomery*, 32 N.C. App. 154, 157, 231 S.E. 2d 26, 29 (1977); 89 C.J.S., *Trial* § 615b (1955). Both assignments of error are therefore overruled.

[3] Petitioners attack the agreement between the Town and Duracell International and Crescent Land and Timber Company to delay annexation of the Duracell plant located on land owned by Crescent. They assert that the agreement violated both statutory and constitutional provisions. We do not reach the substantive questions petitioners attempt to raise because we do not believe petitioners have standing to raise such questions.

A party has the necessary standing to raise a constitutional question only if he alleges some direct injury in fact. *See Charles Stores v. Tucker*, 263 N.C. 710, 717, 140 S.E. 2d 370, 375 (1965). By statute, G.S. 1-271, only a party aggrieved by the ruling of a lower court may appeal. Not only did petitioners fail to advance any of the grounds for appeal specifically enumerated in G.S. 160A-38(f), but they also failed to show how the Town's agreement with Duracell and Crescent amounted to "a denial of [their] personal property right or the imposition of a burden or obligation" upon them. *In re Application for Reassignment*, 247 N.C. 413, 421, 101 S.E. 2d 359, 366 (1958); *Gregg v. Williamson*, 246 N.C. 356, 98 S.E. 2d 481 (1957); *Queen City Coach Co. v. Carolina Coach Co.*, 237 N.C. 697, 76 S.E. 2d 47 (1953). Petitioners made no attempt to show how the Town's failure to annex the Duracell plant could have caused them, for example, to pay more taxes or to receive less services than would have been the case had the plant been annexed.

We therefore hold that petitioners have no standing to question the constitutionality of the Town's agreement with Duracell and Crescent and that they were not aggrieved within the meaning of G.S. 1-271 by the Town's failure to simultaneously annex the Duracell plant. This assignment is therefore dismissed.

Petitioners' assignment of error to the signing and entry of the judgment affirming the annexation is merely formal and requires no discussion.

The judgment of the Superior Court affirming the annexation of the Laurel Road area of the Town of Valdese is

Affirmed.

Justice CARLTON dissenting.

I respectfully dissent to that portion of the majority opinion which holds that the Town complied with the provisions of G.S. 160A-36(d) in fixing the area to be annexed. Like the majority, I have little authority to cite in support of my position. The issue here is one of statutory construction and I simply interpret the statutory scheme in a way which I believe more fully comports with the intent of our Legislature.

The majority has in essence written the provisions of G.S. 160A-36(d) out of our annexation statutes. It holds that if a town complies with the provisions of G.S. 160A-36(a), (b) and (c), the area in question is then "ripe for annexation" and failure then to comply with G.S. 160A-36(d) will not defeat the annexation. I do not attach such little significance to subsection (d). I consider it a provision of *limitation* and believe that failure to comply with it prevents the area from being "ripe for annexation."

In reaching its conclusion that tree lines are not "natural topographic features," a holding with which I agree, the majority acknowledges the legislative intent behind the statute's requirement that new boundaries follow natural topographic features where practical. That intent, suggests the majority, "was the legislature's concern that the full range of municipal services be available to citizens in the annexed area" and resulted in the inclusion of "topography as an important consideration to be incorporated into the new statutory scheme of annexation." The majority then proceeds to hold, in essence, that topography is not a consideration if the other annexation requirements are met. With such reasoning I cannot agree.

The record clearly establishes that the Town primarily followed property lines, not topographic lines, in establishing the boundaries of the area. It was noted that this practice was followed to avoid administrative and tax problems. (R. p. 49.) Stated simply, the Town found that it could not comply with the topographic requirements of subsection (d) of G.S. 160A-36 *and still comply* with the requirements of subsections (a), (b) and (c). When this situation is presented, I believe that the statute clearly precludes annexation.

The 1959 report of the Municipal Government Study Commission, cited by the majority, provides some insight on the Legislature's reason for including the topographic requirement. It noted that topography is frequently an "effective limitation" on a city's ability to extend facilities. For example, it may be impossible to extend sewer lines without expensive pumping stations. As the report concludes, if such services are not available, "then there is no justification for including such land within the city." Thus, it is apparent that the topographical requirement of subsection (d) was intended as a limitation on annexation and not merely a suggestion.

In a word, I believe that *all* the requirements of G.S. 160A-36 must be met before an area is "ripe for annexation" unless, for compelling reasons not given here, it is simply impracticable to comply with the topographic requirement.

Justice EXUM joins this dissenting opinion.