ALEX M. TRASK, ALLEN N. TRASK, GEORGE ANNE McCARTY, RUTH TRASK GORE, JOHN POLLARD, JIM FARLOW, WILLIAM KNOX TRASK, PINE VALLEY WATER COMPANY, L. T. DAVIS, SUNSHYNE DAVIS, JAMES TYNER, JACQULINE TYNER, CHARLES L. TYNER, JANE TYNER, BRYANT SEVERT, BERLINE SEVERT, CHARLES REAVES, GEORGIE REAVES, FLOYD SMITH, HAZEL SMITH, LUCILLE ELLIOTT, WILLIAM A. ROURK, ETHEL ROURK, HORACE PREVATT, MARY PREVATT, CHARLES SCHELLER, GRACE SCHELLER, BRUCE CRABBS, LINDA CRABBS, RUPERT STRICKLAND, NANCY STRICKLAND, MILDRED BARFOOT, LEON BARFOOT, STEVE BARFOOT, TERESA BARFOOT, WILBER B. BARFOOT, MINNIE BARFOOT, EARL N. OXENDINE, DELTON OXENDINE, LENA OXENDINE, JAMES A. OXENDINE, DOROTHY OXENDINE, DORENDA LONG, SAMUEL LONG, VERTISE DUNCAN, GRACE DUNCAN, KENNETH MILLIGAN, JEAN MILLIGAN, SALLY FOUNTAIN, TRAVIS FOUNTAIN, LUTHER K. MINCEY, EDNA MINCEY, BLANNIE NEAL, JOHN NEAL, BILL ROBERTS, JOSEPH CHARLES WILLIAMSON, LEE ROY COOMBS, MARY LEE COOMBS, LOUIS COOMBS, MAGGIE D. COOMBS, ARTHUR RAMSEY, ALICE RAMSEY, ROBERT J. WILLIAMS, EULENE WILLIAMS, CARL D. PARKER, ALLIE MAY PARKER, JOE M. SMITH, JESSIE NEAL, ISABELL NEAL, KELLEY LYYOD, JAMES G. SPELL, GLADYS SPELL, JOHN HENRY CLEMMONS, THELMA CLEMMONS, RHODNEY MINTZ, HELEN MINTZ, FLOSSIE BRYAN, MAGGIE BRYAN, MRS. BRYAN NEWKIRK, LEON FUTRELLE, BERRY WILLIAMS, ELIZ-

ABETH WILLIAMS, MRS. MAYZELLE JONES, DR. NELSON C. KLAUS,
MRS. NELSON C. KLAUS, MR. BOB R. PRESSLEY, MRS. BOB R.
PRESSLEY, MR. NORMAN EFTING, MRS. NORMAN EFTING, MR. JACK
L. PHILLIPS, MRS. JACK L. PHILLIPS, MR. THOMAS PARKER, MRS.
THOMAS PARKER, MR. DAN R. PARHAM, MRS. DAN PARHAM, MR. L.
MURRIE LEE, MRS. L. MURRIE LEE, MR. DENNIS MASSENGILL, MRS.
DENNIS MASSENGILL, MR. E. W. CALDWELL, MRS. E. W. CALDWELL,
MR. ROBERT K. PENTZ, MRS. ROBERT K. PENTZ, MR. STANLEY D.
HOLLINGSWORTH, MRS. STANLEY D. HOLLINGSWORTH, MR. C. R.
WOOD, MRS. C. R. WOOD, DAVID A. SOLOMON, RICK STEWART, JIM
FARLOW, JAMES F. ROBERTS, CURTIS E. PALMER, MARVIN E.
AUTRY, JOHN M. POLLARD, JR., A. C. PALMER, CURTIS W. SMITH,
RUSSELL EDMONDSON, ROBERT FRANK LEE, JOHN W. KAISER,
AMOCO OIL COMPANY, CLARENCE W. HARRELSON, NORMAN H.
MELTON, DOUGLAS J. MORGAN, F. RICHARD McDERMOTT, JACK N.
L. EVERETT, JOHN E. MIDGETT, JR., APEX OIL COMPANY, W.
HAROLD GRIFFIN, WILLIAM J. LYNCH, JR., EDGAR V. SELLERS,
PRESTON L. HASSON, GEORGE G. JONES, ROBERT E. CONNELLY,
CLIFFORD WINEFORDNER, RUSSELL BARKER, ROBERT J. JENSKI,
WILLIS E. MANNING, ASPHALT AND PETROLEUM COMPANY, CARL
MITCHELL, TONY SPICER, MIKE L. HARRIS, JR., WILLIAM S. COOKE,
MRS. BRENDA HODGES, BABCOCK AND WILCOX, MR. DON SCHMITT,
MRS. DON SCHMITT, MR. K. E. SARVIS, MRS. K. E. SARVIS, MR. DON
KNOWLTON, MRS. DON KNOWLTON, MR. EUGENE A. LEES, MRS.
EUGENE A. LEES, MRS. IRENE WALSH, CAROLINA POWER AND
LIGHT COMPANY, WILLIAM R. DAVIS, FLOYD PALMER, HERBERT
FRANCIS MINTZ, MARIAN CONSELENO MINTZ, JACK C. MYRICK,
EDITH G. MYRICK, PAUL E. MAAG, ANN L. MAAG, W. LEE
JOHNSTON, CATHERINE H. JOHNSTON, CONSTANCE M. TANVERDI,
REX B. SEAL, BETTY W. SEAL, LEON E. SULLIVAN, NAOMI S.
SULLIVAN, HENRY B. JENKINS, GEORGIA K. JENKINS, JOHN H.
BOWEN, JR., SARAH P. BOWEN, CHARLES E. CARRAWAY, JUDY W.
CARRAWAY, JESSE E. McLAWHON, JUDY C. McLAWHON, CHAMPION
PARTS REBUILDERS, JERRY A. EDWARDS, RACHEL I. EDWARDS,
LINWOOD W. ROGERS, JR., JESSIE D. ROGERS, ROBERT L. SIESEN, E.
JEAN SIESEN, THOMAS J. MUNO, SALLY J. MUNO, RALPH T.
WALLACE, JIMMY H. WALLACE, CHARLES L. HAAS, MARTHA P.
HAAS, CLARENCE A. ALFORD, JEAN G. ALFORD, ROBERT L.
HOUSTON, BILLIE S. HOUSTON, JEROME E. PINCKNEY, II, SANDRA F.
PICKNEY, JESSE C. PAGE, DORIS W. PAGE, JAMES R. EDWARDS,
RUTH B. EDWARDS, WALTER CHIMIAK, WANDA K. CHIMIAK, WAR-
REN W. RICH, LORRAINE Q. RICH, CURTIS L. SCHACHER, EILEEN B.
SCHACHER, CHARLES T. MARSHALL, SYLVIA H. MARSHALL, ERIC
M. FARR, ANNE L. FARR, JAMES H. COLEY, JR., BONITA H. COLEY,
DONALD T. WHITMIRE, CAROLYN P. WHITMIRE, MICHAEL J. BAR-
RETT, GAIL B. BARRETT, ARTHUR D. YAUSSY, HELEN L. YAUSSY,
THOMAS I. JONES, EVELYN S. JONES, WENDELL L. TRIPLETT,
ADRIAN H. TRIPLETT, BLAYNE B. BURMAHL, SARAH S. BURMAHL,
JOHN D. HALLENBECK, ELOISE S. HALLENBECK, DONALD M. GOW-
DY, JEANNE S. GOWDY, DONALD R. WEDGEWORTH, PHYLLIS C.

Trask v. City of Wilmington

WEDGEWORTH, VICTOR E. SIZEMORE, GLORIA M. SIZEMORE, CAPE FEAR BONDED WAREHOUSE, CHESTER J. MALLEY, MARY K. MALLEY, BILLY F. NARRON, KATHERINE M. NARRON, RICHARD S. RENNINGER, HELEN J. RENNINGER, J. MANLY POLLARD, M. ELIZABETH POLLARD, J. RYDER LEWIS, MARY ANNE LEWIS, CHARLES REGISTER, JR., GERALDINE P. REGISTER, PETER H. KODER, GRACE T. KODER, WESLEY C. JONES, BETTY RUTH JONES, NORMAN E. GRAY, EUNICE E. GRAY, ROGER A. HEATH, FAYE F. HEATH, CHARLES O. JEREMIAS, VIRGINIA C. JEREMIAS, JAY T. GILLOGLY, SHARON L. GILLOGLY, WALTER A. GAWLOSKI, PAULINE M. GAWLOSKI, JAMES J. HAVIARAS, JOANNE V. HAVIARAS, ELWYN E. PALMER, MARTHA S. PALMER, CLYDE M. SIKES, MARJORIE F. SIKES, HANSEL W. COUVILLION, R. M. WILLIAMS, MOBIL OIL COMPANY, THOMAS E. BROWN, ANN W. BROWN, TIMOTHY J. GALLIVAN, CAROL J. GALLIVAN, FREDRICK M. HORNACK, M. KATHERINE HORNACK, SINGER OIL COMPANY, CECIL E. TURNER, JEAN S. TURNER, JESSE W. FIELDER, PAULINE F. FIELDER, RAYA A. OSCARSON, WALTER F. WEIS, JR., LOUISE S. WEIS, DAVIS E. WARNER, JR., CATHERINE S. WARNER, OTIS H. JOHNSON, JR., KATHRYN B. JOHNSON, WILLIAM D. LATHAM, BEATRICE R. LATHAM, EMERY I. HORVATH, HELEN HORVATH, SUN OIL COMPANY, LARRY W. ALLMAN, PEGGY H. ALLMAN, HAROLD L. RUNION, MARY L. RUNION, JOHN R. PERDUE, CATHERINE C. PERDUE, EDWARD A. WILSON, MABRY C. WILSON, BENJAMIN P. KENNEDY, ENID H. KENNEDY, ULDIS BIRZENIEKS, JANE H. BIRZENIEKS, MARVIN L. KEARNEY, ANNA M. KEARNEY, ROBERT K. JARRET, JOANNE W. JARRET, WILLIAM H. MELTON, BETTY M. MELTON, CLAUDE B. JONES, MARGARRET F. JONES v. CITY OF WILMINGTON, NORTH CAROLINA; BENJAMIN B. HALTERMAN; MARGARET FONVIELLE; JOSEPH DUNN; LUTHER JORDAN; WILLIAM SCHWARTZ; TONY PATE; AND RALPH W. ROPER

No. 825SC534

(Filed 20 September 1983)

1. **Municipal Corporations § 2.6— annexation—failure to show proposed sewer interceptor on map**

G.S. 160A-47 does not require an annexation report to include a map showing proposed sewer interceptors for sewer extensions into the area to be annexed. Moreover, the failure to include a proposed sewer interceptor on a map of the proposed water and sewer extensions into the area to be annexed was not of such character as to invalidate the annexation ordinance where the annexation report (1) described in detail the proposed interceptor and its role in the proposed water and sewer extension, (2) included the interceptor among those facilities legally required to be under construction within twelve months of annexation, and (3) made available the detailed engineering maps and plans for the construction of the interceptor.

2. **Municipal Corporations § 2.6— annexation—provision of sewer facilities—necessity for cooperation with other governmental units**

    A city's plan for providing sewer facilities to an area to be annexed was not dependent on a doubtful contingency and did not delegate the performance of this duty to others because the plan depended on a county's construction of a sewer interceptor project and a town's construction of a sewer connector pursuant to a federally financed regional plan and agreements by the various governmental units involved in the regional plan.

3. **Municipal Corporations § 2.2— annexation—use of natural topographic features in setting boundaries—failure to include golf course**

    The fact that the boundaries of an area to be annexed did not encompass an adjacent golf course did not constitute a failure to use natural topographic features "wherever practical" in violation of G.S. 160A-48(e) where the inclusion of the golf course in the area would have had the effect of lowering the population density below the level required by G.S. 160A-48(c)(1).

APPEAL by petitioners from *Collier, Judge.* Judgment entered 13 November 1981 in Superior Court, NEW HANOVER County. Heard in the Court of Appeals 11 May 1983.

This is a civil action wherein petitioners, pursuant to G.S. 160A-49(h), seek review of an annexation ordinance enacted and adopted by respondent city on 24 March 1981. Petitioners are residents of the area to be annexed.

On 13 January 1981, the Wilmington City Council adopted a resolution expressing its intent to annex a certain area outside its limits. On or about this date, respondent city published its annexation report, *Annexation 1981.* After appropriate notification, a public hearing was held pursuant to G.S. 160A-49 on 24 February 1981. The City Council thereafter adopted the ordinance.

Petitioners initiated this action by filing a petition in Superior Court, pursuant to G.S. 160A-50 seeking, *inter alia,* to have the ordinance declared invalid. Petitioners also asked for a stay of the operation of the ordinance while judicial review was pending. An order granting the stay was entered by Strickland, Judge, on 19 May 1981. On 19 June 1981, an order was entered by Strickland, Judge, disallowing petitioners' challenge to the constitutionality of the statutory annexation procedure.

Review of the ordinance in Superior Court occupied several days. On 13 November 1981, the court announced judgment in

favor of respondents. That judgment, signed on 27 November 1981, contained the following findings of fact:

1. The record of the annexation proceedings submitted in compliance with G.S. 160A-50, including the annexation report adopted by the Wilmington City Council on January 27, 1981, demonstrates *prima facie* compliance with all of the statutory requirements for annexation by cities over 5,000 set forth in Chapter 160A, Article 4A, Part 3 of the North Carolina General Statutes.

2. No evidence has been presented that the area annexed by the City of Wilmington in the annexation ordinance adopted March 24, 1981 failed to comply with the requirements of G.S. 160A-48, "Character of the Area to be Annexed," and the Court therefore finds that the annexed area does meet all the requirements of G.S. 160A-48.

3. No evidence was presented of any failure by the City of Wilmington to comply with any of the procedures for annexation required by Chapter 160A, Article 4A, Part 3 of the General Statutes, except for failure to comply with G.S. 160A-47 (annexation report and plans) as more particularly set forth in subparagraph (4) below, and the Court therefore finds as a fact that all such other procedural requirements were complied with.

4. There was evidence presented, and the parties stipulated, that the Report, as compiled, failed to include a map indicating the precise location of the proposed Northeast Sewer Interceptor, and integral part of the proposed sewer extensions. However, the petitioners failed to meet their burden of showing that the City had failed to substantially comply with the requirements of G.S. 160A-47. Petitioners further failed to show that they would be materially or substantially injured by any failure on the part of the City to comply.

5. Save and except for the exclusion of a map depicting the location of the Northeast Sewer Interceptor, the City has fully complied with the statutory requirements of Chapter 160A, Article 4A, Part 3 of the North Carolina General Statutes.

6. Petitioners have also failed to meet their burden of showing by the greater weight of the evidence that the City would or could not provide to them the major services as required by G.S. 160A-47 on substantially the same basis and in the same manner as such services are provided within the City prior to annexation.

7. Petitioners have failed to show by the greater weight of the evidence that the City would or could not provide to them water and sewer service required by G.S. 160A-47 according to the policies in effect within the City at the time of annexation.

8. There is no evidence that Petitioners lack an adequate remedy at law in the event the City fails to comply with its plans, since the petitioners are entitled to seek a writ of mandamus pursuant to G.S. 160A-49.

Based on these findings, the court concluded that the City had complied with the annexation procedure set out in the statutes; that petitioners had failed to show any injury resulting from a failure to comply with the statutory procedure; that the area to be annexed met the statutory requirements regarding the characteristics of such areas. The court then declared that the ordinance was valid in its entirety and in full effect. From this judgment, petitioners appealed.

*Burney, Burney, Barefoot and Bain, by Auley M. Crouch, III, and John J. Burney, Jr., for petitioner appellants.*

*R. Michael Jones and Laura E. Crumpler, for respondent appellees.*

JOHNSON, Judge.

Petitioners assign as error the trial court's findings of fact and conclusions of law that the record of the annexation proceedings, specifically including the annexation report, demonstrates compliance with the applicable statutes governing annexation by municipalities with more than 5,000 persons. Our Supreme Court has held that the record of annexation proceedings must demonstrate *prima facie* "complete and substantial" compliance with the statutes as a condition precedent to the right to annex.

*In re Annexation Ordinance (Goldsboro),* 296 N.C. 1, 249 S.E. 2d 698 (1978).

[1]  Petitioners' assignments of error deal with both G.S. 160A-47 (regarding the annexation plan) and G.S. 160A-48 (regarding the character of the area to be annexed). With regard to the annexation plan, petitioners first point out that the map of the proposed water and sewer extensions into the area to be annexed does not show the proposed Northeast Interceptor sewer line. Petitioners contend that a map showing proposed sewer interceptors is required in the annexation report, as a statutory prerequisite to annexation, and that the omission thereof is fatal to the ordinance. By failing to include such a map, petitioners contend, the respondents have not demonstrated the required level of compliance with the statute.

In pertinent part, the statute relied upon reads as follows:

A municipality exercising authority under this Part shall make plans for the extension of services to the area proposed to be annexed and shall, . . . prepare a report setting forth such plans to provide services to such area. The report shall include:

(1) A map or maps of the municipality and adjacent territory to show the following information:

. . .

b. The present major trunk water mains and sewer interceptors and outfalls, and the proposed extensions of such mains and outfalls as required in subdivision (3) of this section.

. . .

(3) A statement setting forth the plans of the municipality for extending to the area to be annexed each major municipal service performed within the municipality at the time of annexation. Specifically, such plans shall:

. . .

b. Provide for extension of major trunk water mains and sewer outfall lines into the area to be annexed so that when such lines are constructed, property owners in the area to be

annexed will be able to secure public water and sewer service, according to the policies in effect in such municipality for extending water and sewer lines to individual lots or subdivisions.

G.S. 160A-47.

Respondent concedes in its brief, as it did in the annexation report and at trial, that the map in question does not show the proposed Northeast Interceptor. Respondent contends, however, that the statute makes no such requirement.

We agree with respondent. G.S. 160A-47 specifically requires that certain items be shown on maps in the report. Among these items are presently existing sewer interceptors. Also required to be shown are presently existing and proposed water mains and sewer outfalls. Not included among those things required to be shown are proposed sewer interceptors. Therefore, the omission of the proposed Northeast Interceptor was neither a fatal failure of complete and substantial compliance with the statute nor a "slight irregularity" as respondent, and apparently the court, would characterize it. Rather, it is simply a literal adherence to the requirements of the statute.

Petitioners nevertheless contend that the omission of the proposed interceptor is an error of such a character as to invalidate the annexation proceeding and the ordinance. Petitioners note the "central importance" of adequate water and sewer facilities to sound urban development. This importance, they contend, makes the complete and accurate inclusion on maps of all proposed facilities crucial to the general public's understanding of what is involved in a particular annexation. It is the policy of the state, in providing for municipal annexation, to promote "sound urban development" and in so doing to provide for the delivery of quality urban services to the developed area. G.S. 160A-45. We recognize the importance of adequate water and sewer facilities to the legislative end of sound urban development. The legislature has recognized the same and specifically required that certain present and proposed water and sewer facilities be shown in the report. That the legislature did not include proposed sewer interceptors among those certain facilities is a matter of legislative concern. We cannot infer from our reading of G.S. 160A-47 that

proposed sewer interceptors must be included on the maps that accompany annexation reports.

Moreover, the report: (1) does mention and describe in detail the proposed Northeast Interceptor and its role in the proposed water and sewer extension; (2) includes the interceptor among those facilities legally required to be under construction within twelve months of annexation; and (3) makes available the detailed engineering maps and plans for the construction of the interceptor. The failure to include the interceptor on the small and considerably less detailed exhibit maps in the annexation report does not amount to an omission of such a character that petitioners can claim they were thereby denied access to information vital to their cause. Our Supreme Court has considered the sufficiency of annexation proceedings on several occasions and has held:

> The central purpose behind our annexation procedure is to assure that, in return for the added financial burden of municipal taxation, the residents [of the area to be annexed] receive the benefits of all the major services available to municipal residents. [Citations.] The minimum requirements of the statute are that the city provide information which is necessary to allow the public and the courts to determine whether the municipality has committed itself to provide a non-discriminatory level of service and to allow a reviewing court to determine after the fact whether the municipality has timely provided such services.

*In re Annexation Ordinance (Charlotte)*, 304 N.C. 549, 554, 284 S.E. 2d 470, 474 (1981); *see also Moody v. Town of Carrboro,* 301 N.C. 318, 271 S.E. 2d 265 (1980), *reh. denied*, 301 N.C. 728, 274 S.E. 2d 230 (1981). Petitioners' contention in this regard is without merit.

[2] Still challenging the city's level of compliance with G.S. 160A-47, petitioners next point out that the entire plan for providing sewer facilities to the area to be annexed depends on the construction by New Hanover County of the Northeast Interceptor. The interceptor, in turn, will only work if connected to the proposed Wrightsville Beach connector to be constructed by the town of Wrightsville Beach.

G.S. 160A-47, quoted above in pertinent part, specifically requires that the annexation report set forth plans by the city for

providing water and sewer facilities to the area to be annexed. With respect to the annexing municipality's duty to provide urban services, our Supreme Court has said, "The performance of this duty may not be made to depend upon a doubtful contingency and may not be delegated to others so as to relieve the city of the duty." *In re Annexation Ordinance (Jacksonville)*, 255 N.C. 633, 646, 122 S.E. 2d 690, 700 (1961).

Petitioners argue that the plan for extending the required sewer services into the area to be annexed is dependent on a doubtful contingency and embodies a delegation of the city's duty to provide those services. Therefore, petitioners contend that the city has not met its burden of complete and substantial compliance with the requirements of G.S. 160A-47 and the annexation ordinance is, therefore, invalid.

Petitioners apparently contend that complete and substantial compliance with the statute requires that the annexation plans provide for the extension of municipal services without reference to regional plans, federally financed and supervised projects, or dependence on the cooperation of other local units of government. We find nothing in the applicable statutes or case law to support this contention.

We first refer back to our discussion of the purpose of the annexation report and point out, as has our Supreme Court, that the statute requires only that the city provide the information necessary to determine whether a commitment has been made to provide the required level of service to the annexed area. *In re Annexation Ordinance (Charlotte)*, 304 N.C. 549, 284 S.E. 2d 470 (1981).

Respondents point out that the Northeast Interceptor project, including the Wrightsville Beach connector, is part of a regional 201 Facilities plan for the greater Wilmington area, *see* 33 U.S.C. §§ 1251 *et seq.* (Federal Water Pollution Control Act), including Wrightsville Beach and New Hanover County. This plan was previously agreed to and approved by the governmental units involved. Implementation of the plan, including the construction and financing of the interceptor project, is provided for in a series of interlocal agreements, submitted into evidence by respondents. These agreements are authorized under our statutes, G.S. 160A-461, and are legally binding on the parties

thereto. Such an agreement is neither a doubtful contingency nor a delegation of the city's duty to provide the necessary services. Furthermore, petitioners' contention runs counter to the emphasis on regionalism and intergovernmental cooperation that characterizes recent legislation in this area. *See, e.g.,* G.S. 160A-460 *et seq.* (Interlocal Cooperation); G.S. 113A-100 *et seq.* (Coastal Area Management). Petitioners' contention is without merit.

**[3]** Petitioners' remaining challenge to the ordinance concerns the fixing of the boundaries of the area to be annexed. Petitioners argue that the method used by the city to establish the boundaries was not in complete and substantial compliance with the applicable statute, G.S. 160A-48. G.S. 160A-48(c) provides that the area to be annexed must be "developed for urban purposes." One criterion for determining whether an area is so developed is that it have "a total resident population equal to at least two persons for each acre of land included within its boundaries." G.S. 160A-48(c)(1). The statute further prescribes certain guides for determining the boundaries of the area:

> In fixing new municipal boundaries, a municipal governing board shall, wherever practical, use natural topographic features such as ridge lines and streams and creeks as boundaries, and if a street is used as a boundary, include within the municipality land on both sides of the street and such outside boundary may not extend more than 200 feet beyond the right-of-way of the street.

G.S. 160A-48(e).

In the present case, the boundaries of the area to be annexed do not encompass an adjacent golf course. The inclusion of the golf course, by definition an expanse of unpopulated land, in the area would have the effect of lowering the population density of the area below the statutorily required level. Petitioners contend that this failure to include the golf course was "gerrymandering" of the boundary lines in direct disregard of the topographic features of the area and, therefore, a failure to comply with the statute. Petitioners cite the dissent of Justices Carlton and Exum in *Greene v. Town of Valdese,* 306 N.C. 79, 291 S.E. 2d 630 (1982) (interpreting G.S. 160A-36(d), virtually identical to G.S. 160A-48(e), involving annexation by towns of less than 5,000 population), for

the proposition that the use of natural topographic features in establishing boundaries is "a limitation on annexation and not merely a suggestion." *Id.* at 89, 291 S.E. 2d at 637 (Carlton, J., dissenting).

G.S. 160A-48(e) is self-limiting in that it requires that natural topographic features be used "wherever practical." We agree with the majority view in *Greene v. Town of Valdese*:

> Where, however, to follow natural topographic features would convert an area which would otherwise meet the statutory tests . . . into an area that no longer satisfies those requirements, the drawing of boundaries along topographic features is no longer "practical," . . . within the meaning of the language of the statute.

*Id.* at 85, 291 S.E. 2d at 634. Petitioners' reliance on the language of G.S. 160A-48(e) and the dissent in *Greene v. Town of Valdese* is misplaced and their argument is without merit.

In determining the validity of an annexation ordinance, the court's review is limited to the following inquiries: (1) Did the municipality comply with the statutory procedures? (2) If not, will the petitioners suffer material injury thereby? (3) Does the area to be annexed meet the requirements of G.S. 160A-48? *In re Annexation Ordinance (New Bern)*, 278 N.C. 641, 180 S.E. 2d 851 (1971). Our review is limited to determining whether the court below properly answered those inquiries. We have determined that the court below incorrectly found that the city did not comply with G.S. 160A-47. Its consideration of the second inquiry was unnecessary but harmless. The third inquiry was properly answered below. In any event, the trial court's conclusions of law regarding the city's compliance with the statutes are correct.

Petitioners' remaining arguments do not address specifically the challenged annexation ordinance or the city's compliance with the statutes. Rather, they present questions of a more general nature that have already been settled in this jurisdiction. Petitioners have not convinced us that these questions warrant reconsideration in this case and to do so would serve no useful purpose.

The judgment appealed from is

Affirmed.

Judges HILL and PHILLIPS concur.